**Vickey D. COLEMAN, Appellant,**

v.

**MISSOURI PACIFIC RAILROAD COMPANY, Appellee.**

**No. 79–1866.**

United States Court of Appeals, Eighth Circuit.

Submitted April 15, 1980.

Decided June 11, 1980.

Richard S. Paden, Bailey & Paden, Mountain Home, Ark., argued, for appellant; Carley, Gitchel, Bogard, Mitchell & Bryant, P.A., Little Rock, Ark., on brief.

Frederick S. Ursery, Little Rock, Ark., argued, for appellee; Herschel H. Friday, Little Rock, Ark., on brief.

Before STEPHENSON and McMILLIAN, Circuit Judges, and VIETOR,* District Judge.

VIETOR, District Judge.

Appellant's employment with appellee as a railroad brakeman[1] was terminated by appellee. Appellant commenced this Title VII employment discrimination suit alleging that appellee's termination of her employment was the result of sex bias. Upon

* The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa, sitting by designation.

1. Appellant prefers the word "brakeman" instead of "brakeperson."

trial on the merits, the district court [2] found that the appellee had shown valid reasons for terminating appellant's employment and that appellant had failed to show that her termination was based upon any discriminatory reason, and dismissed her complaint.

In this appeal appellant challenges the findings of the district court as clearly erroneous.[3] She concedes that there is evidence to support the district court's findings, but contends that a review of the whole record should lead this court to a "definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). Because we are not convinced that a mistake has been committed, we affirm.

On August 26, 1976, the appellant applied to the appellee railroad company for a job as brakeman. At that time, the Missouri Pacific was making a special effort to hire women for operating positions on the railroad. Ms. Coleman successfully passed physical strength tests and completed the brakeman training program, including trips as a student brakeman. She began working as a paid employee on September 11, 1976. A new employee's first 60 days of work constitute a probationary period during which the employee may be terminated without a showing of good cause. After the probationary period expires the company may terminate the employee only for good cause.

On October 12, 1976, Paul Bonham, a train conductor under whose supervision Ms. Coleman made trips, forwarded to Division Superintendent R. L. McCoy a written recommendation that Ms. Coleman and two other probationary employees, both men, be terminated for poor job performance. Conductor Bonham reported that on one trip Ms. Coleman slept at some length while on duty and that she did not have the strength to perform her tasks.

Superintendent McCoy instructed Trainmaster J. R. White to make a complete "on-the-ground inspection and observation" of the three employees mentioned in Conductor Bonham's letter and report back his findings. Trainmaster White carried out this assignment and in a memorandum dated November 8, 1976, he reported the following: that on student trips it was noted that Ms. Coleman had a difficult time releasing handbrakes and was unable to get the air hose coupled; that on one occasion he personally observed that she was unable to release two handbrakes which another brakeman released for her without difficulty and that she had a difficult time turning an angle cock, which was then done by another crew member; that on another occasion he personally observed Ms. Coleman require assistance in doubling her train over, and that she had some difficulty in understanding some moves which the conductor tried to explain to her, and that she had some difficulty getting up on the side of a car. He concluded by stating: "In my considered opinion, Miss Coleman lacks the manual dexterity and strength necessary to adequately perform the duties of Brakeman." Superintendent McCoy concurred in the recommendation and Ms. Coleman's employment with the railroad was terminated on November 8, 1976.

At the trial, Conductor Bonham testified about the sleeping incident and Ms. Coleman's difficulties in performing certain tasks, Trainmaster White testified about the observations he made that were contained in his report of November 8, and Conductor Albert Kemp testified that he observed Ms. Coleman having difficulties performing her duties and that on a trip she made with him she slept for about one hour, despite his efforts to awaken her. In her testimony, Ms. Coleman admitted the two sleeping incidents but denied that she had difficulties performing her tasks. Several

---

2. The Honorable Paul X Williams, Chief Judge, United States District Court for the Western District of Arkansas.

3. "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Fed.R. Civ.P. 52(a).

co-workers of Ms. Coleman testified that on the one or two days they worked with her they did not notice that she had any problems performing her duties.

■ In a Title VII case, the plaintiff must first demonstrate a prima facie case of discrimination based on one or more specified classifications, including gender. The defendant employer then has the burden of "articulating" a legitimate nondiscriminatory reason for its action. If this is done, the plaintiff may then show that the articulated reason is really a pretext for what is in reality an illegal discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

■ There was substantial evidence before the district court to support its finding that the appellee had shown valid reasons for terminating appellant,[4] and the record supports the district court's finding that appellant failed to show that her termination was really based upon a discriminatory reason. Appellant's contention that the district court's findings are clearly erroneous and that a mistake has been committed rests primarily on evidence that Conductor Bonham, whose unfavorable report to Superintendent McCoy triggered the investigation of appellant's job performance, was opposed to hiring women and once suggested not helping women employees or doing their work for them so "that if they couldn't do the work we could get rid of them." In support of her contention, appellant correctly points out that an impermissible discrimination exists even if bias is merely a contributing factor rather than the sole factor in the employer's decision. *Barnes v. Costle,* 561 F.2d 983, 990–92 (D.C. Cir. 1977); *Gillin v. Federal Paperboard Co.,* 479 F.2d 97 (2d Cir. 1973); *Sprogis v. United Airlines, Inc.,* 444 F.2d 1194, 1198 (7th Cir.), *cert. denied,* 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971); *Saracini v. Missouri Pac. R.R.,* 431 F.Supp. 389, 394–95 (E.D. Ark. 1977).

The district court did not ignore the evidence of Bonham's attitude toward women employees, and expressly commented in its findings: "It is possible that in amassing and evaluating reports on the plaintiff, the hiring personnel may have received reports from reporters who were prejudiced, but that does not mean that refusal to hire or termination was based on the fact that plaintiff is a female. The executives of Missouri Pacific are charged with responsibility to get competent employees and so long as their judgment is not based on a prohibited reason, they are free to hire and terminate." Assuming that Bonham's unfavorable report was motivated in part by bias, a possibility that the district court recognized, the entire evidence in this case nevertheless fully supports the district court's findings and fails to leave us with "the definite and firm conviction that a mistake has been committed." Ms. Coleman's job performance inadequacies were fully substantiated by Trainmaster White's investigation and by ample credible evidence at the trial. The evidence clearly supports the finding that Superintendent McCoy's decision to terminate appellant's employment was made solely on the basis of reliable information about Ms. Coleman's job performance, and the record fully supports the finding that appellant did not show that any bias on the part of Bonham was a contributing factor in McCoy's decision to terminate her employment.

This case is simply not one in which, because of a definite and firm conviction that a mistake has been committed, this court "may substitute its judgment for the trial court's findings notwithstanding substantial evidence to support it." *Jackson v. Hartford Accident & Indem. Co.,* 422 F.2d 1272, 1278 (8th Cir. 1970) (Lay, J., concurring).

Affirmed.

---

4. Although the district court found that appellee had "shown" valid reasons for its action, the standard to be applied under *McDonnell Douglas* is a less burdensome one of *articulating* some legitimate, nondiscriminatory reason, which does not require *proof* of the absence of

a discriminatory motive. *Board of Trustees v. Sweeney,* 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978); *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 578, 98 S.Ct. 2943, 2950, 57 L.Ed.2d 957 (1978).