560 F.Supp. 631 (1983)
Hassan M. GHALAM, Plaintiff,
v.
TESSON FERRY, INC., Defendant.
No. 81-1198C(2).
United States District Court, E.D. Missouri, E.D.
March 30, 1983.
*632 Francis H. Kennedy, Jr., Manchester, Mo., for plaintiff.
Robert J. Koster, St. Louis, Mo., for defendant.

MEMORANDUM
NANGLE, District Judge.
Plaintiff Hassan M. Ghalam brought this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. He alleges that the defendant discharged him and subjected him to discriminatory treatment because of his national origin. In addition, the plaintiff contends that his discharge was in violation of the personal service contract executed by the plaintiff and the defendant. In response to the plaintiff's complaint, defendant Tesson Ferry, Inc. counterclaimed against the plaintiff. The defendant alleges that it suffered damages as a result of the plaintiff's failure to properly perform his duties, and that the plaintiff made material misrepresentations which fraudulently induced the defendant to enter a contract with the plaintiff.
This case was tried to the Court sitting without a jury. The Court having considered the pleadings, the testimony of the witnesses, the documents in evidence and the stipulations of the parties, and being fully advised in the premises, hereby makes the following findings of fact and conclusions of law, as required by Rule 52 of the Federal Rules of Civil Procedure.

*633 FINDINGS OF FACT
1. Plaintiff, Hassan M. Ghalam, is of Iranian extraction and presently is a resident of the State of Missouri.
2. Defendant, Tesson Ferry, Inc. is a corporation doing business in the St. Louis Metropolitan area, and is engaged in an industry affecting commerce. The corporation is an employer within the meaning of 42 U.S.C. § 2000e(b).
3. Plaintiff filed charges of employment discrimination with the Equal Employment Opportunity Commission (hereinafter "E.E. O.C.") within one hundred eighty days of his termination, and brought this lawsuit within ninety days of receipt of his Right-to-Sue letter from the E.E.O.C.
4. Prior to entering into an employment contract, negotiations took place between the plaintiff and defendant over a period of several months. Joseph and Carol Layton, the sole stockholders of Tesson Ferry, Inc., conducted these negotiations on behalf of the defendant. During these negotiations, the plaintiff discussed his background in the hotel and restaurant management business. There was testimony establishing that the plaintiff worked with the Statler Hilton Hotel in New York City, where he was the restaurant auditor for about one year, and at the Park Sheraton Hotel in New York City where he eventually became assistant to the general manager of a hotel which included restaurant and banquet facilities for over 1,100 seats. Subsequently, the plaintiff later joined the Holiday Inn organization where he worked for about seven years, beginning at the La Guardia Airport facility. The plaintiff then served as a general manager in Rochester, New York, followed by a general manager position at the Dayton, Ohio Holiday Inn. Prior to his employment by the defendant, the plaintiff worked as the general manager of the Holiday Inn downtown in St. Louis. The information that the plaintiff provided to the defendants concerning his background orally and in the form of a written resume truly depicted the plaintiff's past experience in the restaurant and hotel management field.
5. It is clear from the evidence that Joseph Layton and Carol Layton had no experience in the restaurant business when they started the Old Mexico Restaurant. They employed a number of their relatives to help run the restaurant. At the time the Laytons were negotiating with the plaintiff, they were seeking an individual with sufficient experience to be in charge of the overall operation of the restaurant, and to be responsible to them for the complete operation of the business.
6. The defendant employed the plaintiff pursuant to a written contract dated October 9, 1979 for a five year period, commencing on November 1, 1979 and terminating on October 30, 1984. Under the terms of the contract, the plaintiff was to be paid $37,000 per year base salary, with a provision for yearly increases based upon gross receipts and cost of living increases, as well as a stated percentage increase. The contract further provided that should the contract be terminated by the defendant "any unpaid portion of this contract shall be paid according to the regular schedule of payments provided for herein."
7. The contract enumerated the following duties for which the plaintiff would be responsible:
a) general manager of any restaurant operated by the defendant;
b) development of expansion programs;
c) assisting in the choice of sites for new restaurants;
d) projection of gross and departmental revenues of each unit;
e) projection of operating costs by department and by gross of each unit;
f) development of employment and training programs;
g) discharge of any employee of any unit except the present managers of Old Mexico Restaurant without prior consultation with the president of Old Mexico Restaurant.
8. At the time that the defendant hired the plaintiff, the only restaurant that was in operation was Old Mexico Restaurant. Under the terms of the contract, the plaintiff *634 immediately assumed the position of general manager of the Old Mexico Restaurant. As manager he was responsible for the following: first, the preparation of monthly profit and loss statements showing income and expenses and a net profit or loss for the month in question; second, the supervision and keeping of bank records, checkbooks, deposits, and all bookkeeping procedures; third, the payment of invoices, bills, and payroll taxes; and finally, the training of all employees.
9. The evidence at trial established that the plaintiff failed to perform the responsibilities required by the contract in a good and workmanlike manner. He failed to prepare a number of the monthly profit and loss statements for a number of months he was employed by the defendant, and the ones he did prepare failed to reflect the actual financial position of the business. In addition, the plaintiff failed to maintain accurate books or develop efficient bookkeeping procedures. Furthermore, a number of the projections he made for possible new restaurants contained mathematical errors in the areas of seating, sales, and income. Also, the designs he submitted for these new restaurants were unworkable and therefore of no value to the defendant. Finally, plaintiff failed to develop employment training programs, or teach members of the staff to properly run and manage the Old Mexico Restaurant.
10. Although, the plaintiff failed to substantially perform the duties required by the contract, the defendant was unable to point out any specific monetary loss that was suffered as a result of the plaintiff's activities. It is clear from the evidence at trial that the Laytons had little or no experience in the restaurant business. They hired the plaintiff with the hope that he might institute new procedures, plan for expansion, and organize the bookkeeping methods. Unfortunately, the plaintiff was unsuccessful in these areas. Although, the plaintiff failed in these duties, the only evidence offered to support the contention that he caused the defendant to suffer monetary loss was in relation to a loan that the defendant attempted to procure for a new facility. However, the defendant was unable to establish that the plaintiff's errors in the projection was the reason that the company was denied the loan for the new restaurant.
11. During the plaintiff's tenure at Old Mexico, this country suffered what has become known as the "Iranian Hostage Crisis." It was the contention of the plaintiff at trial that it was as a result of this crisis and the resulting negative feelings toward Iranians that his responsibilities at the restaurant were lessened and he eventually was fired. In support of this proposition, the plaintiff referred to an incident where he found a roll of paper on his desk upon which Khoemeini's picture was stamped. However, the evidence at trial established that this was in response to the plaintiff sending flowers to Mrs. Layton with an accompanying card with the signature of the Khoemeini. Mrs. Layton testified these incidents were merely practical jokes.
12. It is clear from the evidence at trial that the defendant was aware of the plaintiff's national origin when the contract was executed. The plaintiff was discharged because of his failure to properly perform his duties as required by the contract and not because of his national origin.

CONCLUSION OF LAW
This Court has jurisdiction of this case pursuant to 42 U.S.C. § 2000e-5(f). Plaintiff claims that he was subjected to discriminatory treatment and discharged because of his national origin. In addition, the plaintiff contends that his discharge was in violation of a personal service contract executed with the defendant. The defendant has counterclaimed and alleges that it has suffered monetary loss as a result of the plaintiff's failure to properly perform his duties, and that the plaintiff misrepresented his background which fraudulently induced the defendant to hire the plaintiff. The plaintiff's charge of discrimination shall be considered first.
In a Title VII cause of action the plaintiff has the initial burden of proving *635 by a preponderance of the evidence a prima facie case of discrimination. If the plaintiff is successful, the defendant must then articulate a legitimate nondiscriminatory reason for their actions. The burden of producing evidence then shifts back to the plaintiff who must show by a preponderance of the evidence, that the defendant's explanation was merely a pretext for discrimination. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); McDonnell Douglas Corporation v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Coleman v. Missouri Pacific Railroad Company, 622 F.2d 408 (9th Cir.1980); Kirby v. Colony Furniture Company, Inc., 613 F.2d 696 (8th Cir.1980).
The elements of a prima facie case in a Title VII cause of action vary according to the particular claim that a plaintiff asserts. In order to establish a prima facie case in a discharge action a plaintiff must show that: (1) he belongs to a minority; (2) that he was qualified for the job that he was performing and satisfied the normal requirements in his work; (3) that he was discharged; and (4) that after his discharge the employer assigned white employees to perform the same work. Person v. J.S. Alberici Construction Company, Inc., 640 F.2d 916 (8th Cir.1981).
Applying these principles to the facts of this case, it must be concluded that the plaintiff has failed to meet his initial burden of proving by a preponderance of the evidence a prima facie case of discrimination. The plaintiff has failed to demonstrate that he performed his job adequately, or that he satisfied the requirements set out in the contract executed by the parties. See Findings of Fact Nos. 9 and 12. Furthermore, it is the conclusion of this Court that the actions of the defendant resulted from the failure of the plaintiff to substantially perform the duties required of him by the contract, rather than any intent on the part of the defendant to discriminate against the plaintiff because of his national origin. See Findings of Fact Nos. 11 and 12. Therefore, judgment will be entered for the defendant on count I of the plaintiff's first amended complaint.
As a general rule, an employer may discharge an employee with or without cause, if the reason for the discharge is not illegal. However, Missouri courts have drawn a distinction between those cases which involve an employment contract for a definite term and those cases which concern an employee who has not been hired for a specified number of years. In the former cases, a burden rests on the employer to prove justification. Gaines v. Jones, 486 F.2d 39, 41 (8th Cir.1973). Under Missouri law, a plaintiff must show by a preponderance of the evidence that he substantially performed the duties required by the contract, up to the time he was prevented from completing his task by the defendant. The burden then shifts to the employer to show that the discharge was for good cause. Id. However, before the burden shifts to the employer, the plaintiff must meet his burden of showing that he substantially performed, by demonstrating that his duties under the personal service contract were accomplished "in a good and workmanlike manner, and unless an employee has expressly agreed to secure particular results, "the results of his performance are not material." Id. at 42. It is the conclusion of this Court that the plaintiff has failed to meet this burden. He was unable to take control of the defendant's business and manage the restaurant in a good and workmanlike manner, as required by the contract. See Findings of Fact Nos. 9 and 12. Accordingly, judgment will be entered for the defendant on count II of the plaintiff's complaint.
In response to the plaintiff's complaint, the defendant has counterclaimed against the plaintiff alleging that it suffered damages as a direct result of the plaintiff's failure to properly perform his duties required by the contract. It is clear from the record that when the defendant hired the plaintiff he was extremely inexperienced in the restaurant business. See Findings of Fact No. 5. Although, the evidence established that the plaintiff did not accomplish *636 the results required by the contract, the defendant was unable to draw a causal connection between the failure of the plaintiff to properly perform his duties and any monetary loss that the defendant might have suffered during the plaintiff's employment. See Findings of Fact No. 10. Accordingly, judgment will be entered for the plaintiff on count I of the defendant's counterclaim.
In count II of the counterclaim the defendant alleges that the plaintiff made certain material misrepresentations concerning his experience, background, and past employment in the restaurant and management field. The defendant contends that it relied upon these misrepresentations, and as a direct result of this reliance suffered damages. Under Missouri law, there are nine essential elements of fraud: one, a representation; two, its falsity; three, its materiality; four, the speaker's knowledge of its falsity or ignorance of its truth; five, the speaker's intent that it be acted upon by the hearer in a manner reasonably contemplated; six, the hearer's ignorance of its falsity; seven, his reliance on its truth; eight, his right to rely thereon; and nine, the hearer's consequent and proximate damage. Slater v. KFC Corp., 621 F.2d 932 (8th Cir.1980). The defendant has failed to demonstrate the existence of a number of these elements. Most importantly, the defendant was unable to demonstrate that plaintiff made any material or false misrepresentations. It is the conclusion of this court that in the process of negotiating the employment contract, the plaintiff truthfully represented his background to the defendant. See Findings of Fact No. 4. Furthermore, the defendant has been unable to show that any monetary loss was suffered as a result of the plaintiff's activities. See Findings of Fact No. 10.
Accordingly, judgment will be entered for the defendant on the plaintiff's complaint, and judgment will be entered for the plaintiff on the defendant's counterclaim.