587 F.Supp. 1533 (1984)
Adrienne JONES, Plaintiff,
v.
ITT EDUCATIONAL SERVICES, INC., Defendant.
No. 82-2115C(1).
United States District Court, E.D. Missouri, E.D.
June 29, 1984.
*1534 *1535 Michael Hoare, St. Louis, Mo., for plaintiff.
Thomas R. Jayne and William R. Bay, St. Louis, Mo., for defendant.

MEMORANDUM
NANGLE, Chief Judge.
Plaintiff Adrienne Jones brought this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. She alleges that defendant engaged in sex discrimination by suspending her from her employment, depriving her of the full benefits of an award, and assigning her to a less profitable position. Plaintiff further alleges that her less profitable job assignment was given in retaliation for charges which she had filed with the E.E.O.C. against defendant.
This case was tried to the Court sitting without a jury. The Court having considered the pleadings, the testimony of witnesses, the documents in evidence, and the stipulations of the parties, and being fully advised in the premises, hereby makes the following findings of fact and conclusions of law, as required by Rule 52 of the Federal Rules of Civil Procedure.

A. FINDINGS OF FACT
1. Plaintiff Adrienne Jones is a white female resident of the State of Missouri and was at all times relevant herein a citizen of the United States.
2. Defendant ITT Educational Services, Inc. is a Delaware corporation with its principal place of business in Indianapolis, Indiana, and maintains an office in St. Louis, Missouri.
3. Defendant is engaged in the business of providing private vocational courses. Prospective students are referred to as "leads."
4. Defendant has a marketing department and employs sales representatives to contact leads. Outside sales representatives set up interviews with leads. These interviews generally take place in the homes of the leads. Sales representatives receive compensation in the form of a base salary and commissions for the leads who enroll in defendant's courses. Sales representatives also receive commissions for those students who remain enrolled in the courses for a prescribed period of time.
5. Before students may enroll in courses, they must pass an entrance examination, however. As a rule, entrance examinations are administered on defendant's premises. Entrance examinations have been administered away from defendant's premises on a few occasions, when special arrangements have been made. These exceptions were allowed because the applicants lived considerable distances from defendant's office. Apart from the incident in November, 1981, involving plaintiff, the only place where the admissions test was administered in St. Louis or St. Louis County was defendant's premises.
6. Defendant had a policy forbidding all marketing personnel from administering the admission test or from removing a copy of the admission test from the premises without approval of the Director of Education, Center Director or Assistant Center Director. Plaintiff was aware of the policy.
7. Plaintiff was hired by defendant in 1974, as a secretary in the marketing department. In July, 1981, plaintiff became an outside sales representative. Her supervisor was Joseph Schelling, the marketing manager. Plaintiff had a personal relationship with Mr. Schelling, and in fact lived with him.
8. In November, 1981, in violation of defendant's policy, plaintiff took some admission tests to Metropolitan Vocational Information Center, Inc. (Metro), for release to prospective students. She received permission from Joseph Schelling, who was unauthorized to grant such permission.
9. On April 28, 1982, plaintiff was suspended for twelve days for possessing a vocational test without proper authorization and for releasing tests without authorization of the Center Director, Assistant Center Director or Director of Education.
10. Joseph Schelling was also suspended on April 28, for approving the release of *1536 the tests to plaintiff and for releasing other company materials without authorization. Schelling was later terminated as a result of these policy violations. After the termination, he went to work for a competitor of defendant, Sanford Brown.
11. Apart from plaintiff or Schelling, the only other employee found to have violated defendant's admission test policy was Mr. T.L. Dickerson, another sales representative. Mr. Dickerson had engaged in prior misconduct for which he was reprimanded, including giving money to students. He was suspended sixty days for having a test in his possession without permission.
12. Prior to her suspension, plaintiff received a sales award in the form of a trip to the Kentucky Derby for herself and a friend. Because she was on suspension at the time the trip was scheduled, defendant denied her permission to take the trip. Defendant concluded that plaintiff obtained some additional students as a result of the administration of the admission test, and consequently the rule violation contributed to her sales achievement. She was compensated for the value of the award to herself, although her friend was not.
13. On the day following her suspension, plaintiff filed a charge with the Equal Employment Opportunity Commission (E.E. O.C.). She alleged that her suspension and loss of sales award had been the result of sex discrimination. The E.E.O.C. issued a right to sue letter on September 20, 1982, and plaintiff filed her complaint with this Court on December 20, 1982.
14. Prior to plaintiff's suspension, defendant had determined to reorganize its marketing department. In January, 1982, defendant assigned two new sales supervisors to St. Louis, and in March and April, 1982, new sales representatives were hired. A new lead control system was instituted in April, 1982, and a new lead control clerk was hired in May, 1982. Weekly sales meetings were held and all sales representatives were required to maintain a list of interviews scheduled each week. In addition, the geographic area of each sales representative was altered in April and May, 1982.
15. Prior to the reorganization, plaintiff was generally assigned to all leads south of U.S. Highway 40 in the St. Louis metropolitan area. This assignment was given because plaintiff's home was in the southern portion of the metropolitan area. Plaintiff was not restricted to interviewing leads who were interested in any particular course.
16. The reorganization in the marketing department occurred because defendant was experiencing declining enrollments, and the company was dissatisfied with the performance of Schelling. Defendant also wanted to equitably divide the number of leads among all the sales representatives. Finally, defendant's new approach encouraged the sales representatives to acquire an expertise in a particular course area.
17. In March, 1982, defendant offered a secretarial program for the first time. The class was postponed to June, 1982, because of low enrollment.
18. As part of the reorganization, four sales representatives were assigned leads in the St. Louis metropolitan area, two north of U.S. Highway 40 and two south of U.S. Highway 40. One of the north representatives was assigned secretarial leads and the other was assigned technical leads (those leads interested in non-secretarial courses). The sales representatives for the south were likewise assigned either secretarial or technical leads. Technical leads were primarily male and secretarial leads were primarily female.
19. Plaintiff was assigned to the secretarial leads south of U.S. Highway 40. The assignment was made on the day of plaintiff's return from her suspension. William Ward, defendant's Center Director made the assignments. The reasons given by Ward for plaintiff's assignment were that plaintiff had prior secretarial experience and was a capable sales representative who could assist in the development of the new secretarial program.
*1537 20. Apart from the factors expressed by Ward for plaintiff's assignment, Paul Chamberlin, Schelling's successor testified regarding plaintiff's new assignment. Chamberlin indicated that the secretarial leads designated for home contact by sales representatives were under twenty-one years of age, and would be interviewed in the presence of a parent or guardian. Chamberlin felt that the entry of a female representative into the home would be more acceptable to the parents of young secretarial candidates.
21. On her return from the suspension, Ward explained plaintiff's new assignment to her. Plaintiff was to have responsibility for all secretarial leads south of U.S. Highway 40. If the secretarial leads enrolled in other courses plaintiff would receive credit. In addition, plaintiff could pursue technical leads in the event she exhausted her secretarial leads. Plaintiff's quota system which signifies the weekly number of enrollees she was to obtain was reduced to allow her to rebuild her sales. Ward encouraged plaintiff in her new assignment, and furthermore, she was not limited exclusively to female leads.
22. Subsequent to plaintiff's return, she was not subject to significantly greater scrutiny, supervision or criticism than she had experienced in the past.
23. Plaintiff earned fewer commissions in her new job assignment than she had received prior to her suspension.
24. Plaintiff's attitude toward defendant company deteriorated upon her return from suspension. She often criticized the company, her production was down and her absenteeism was high.
25. After her return, on at least one occasion plaintiff did not report to work for the given reason that she was sick. She in fact was not sick but had sought a job interview at Sanford Brown Business College. Sanford Brown was a competitor of defendant and was the place of Schelling's new employment.
26. On June 15, 1982, plaintiff voluntarily resigned her employment with defendant. She took on new employment with Sanford Brown as a secretary on June 16, 1982.

B. CONCLUSIONS OF LAW
This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3).

1. Sufficiency of Plaintiff's E.E.O.C. Charge
A prerequisite to a Title VII claim is the filing of charges with the E.E.O.C. The scope of subsequent judicial inquiry is limited to those claims which are "like or related to the substance of the complainant's charges before the E.E.O.C." Satz v. ITT Financial Corp., 619 F.2d 738, 741 (8th Cir.1980); Oubichon v. North American Rockwell Corp., 482 F.2d 569, 571 (9th Cir.1973).
Plaintiff's E.E.O.C. complaint contained charges that defendant discriminated against her by suspending her and by denying her the benefit of her sales award. Absent from the complaint are charges of retaliation or discrimination in plaintiff's job assignment upon her return from suspension.
Plaintiff's retaliation and discriminatory job assignment claims are properly before this Court. Both of these claims arose after plaintiff filed her initial complaint with the E.E.O.C. Yet, mandating the return of employees to the administrative agency each time a new claim of discrimination arises constitutes a needless procedural barrier. Oubichon v. North American Rockwell Corp., 482 F.2d at 571. Furthermore, the exhaustion of administrative remedies for claims of retaliation is not required because such claims necessarily arise after the filing of the initial E.E.O.C. charge. Gupta v. E. Texas State University, 654 F.2d 411, 414 (5th Cir.1981); Jones v. ITT Educational Services, Inc., No. 82-2115, slip op. at 3 (E.D.Mo. Apr. 22, 1983). There is no reason for distinguishing between retaliation claims and other claims which arise subsequent to the filing of administrative charges. Consequently, all claims of discrimination alleged in plaintiff's *1538 complaint will be considered by this Court.

2. Suspension
Plaintiff first alleges that her suspension from employment in April, 1982, constituted unlawful sex discrimination. In a Title VII claim, the plaintiff has the initial burden of establishing a prima facie case of discrimination. If the plaintiff is successful, the defendant must articulate a legitimate non-discriminatory reason for its actions. The defendant's evidence need only raise a genuine issue of fact regarding discrimination. The burden of coming forth with additional evidence then shifts back to the plaintiff. The plaintiff must show by a preponderance of the evidence that the defendant's explanation was merely a pretext for discrimination within the meaning of the statute. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Coleman v. Missouri Pacific Railroad Co., 622 F.2d 408 (8th Cir.1980). The plaintiff bears the ultimate burden of establishing discrimination. United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983).
Plaintiff has not established a prima facie case that her suspension was the result of sex discrimination. A prima facie case is established by evidence that two employees are accused of the same offense but are disciplined in different manners. Rohde v. K.O. Steel Castings, Inc., 649 F.2d 317, 322 (5th Cir.1981). Plaintiff here was accused of the unauthorized possession and release of admissions tests. The only other employees charged with the same offense were Messrs. Schelling and Dickerson. Schelling was terminated from his position and Dickerson was suspended for sixty days, although both had engaged in other misconduct. Plaintiff simply has not established that she was treated any different from other employees. Consequently, her suspension claim lacks merit.

3. Sales Award
Plaintiff argues that the deprivation of her sales award trip by defendant likewise was the result of sex discrimination. Plaintiff established a prima facie case by showing that she was not permitted to take advantage of her sales award while others were. Id. Defendant, however, provided a sufficient explanation to rebut any inference created by plaintiff's evidence. See Burdine, 450 U.S. at 254-55, 101 S.Ct. at 1094-95. The trip planned was to occur during the period of plaintiff's suspension. Moreover, defendant did not want to award plaintiff for breaking the admission test policy, as she had procured several enrolled as a result of the policy violation. Finally, plaintiff was compensated for her trip. She was not compensated for her intended traveling companion's share, yet other award winners who travel alone are not reimbursed for a second share. Plaintiff did not present any evidence that defendant's explanation was a mere pretext. Therefore, plaintiff's sales award claim must fail.

4. Post-Suspension Job Assignment
Plaintiff additionally asserts that her assignment to secretarial leads constitutes discrimination per se because of alleged direct evidence that sex played a role in the assignment. E.E.O.C. v. City of St. Paul, 671 F.2d 1162 (8th Cir.1982); Houghton v. McDonnell Douglas Corp., 553 F.2d 561, 564 (8th Cir.1977) cert. denied 434 U.S. 966, 98 S.Ct. 506, 54 L.Ed.2d 451 (1977). Plaintiff relies heavily upon her own letter to Mr. Ward, her supervisor. Plaintiff identifies the letter as an attempt by her to verify with Mr. Ward her understanding of her new assignment. In the letter she refers to her assigned leads as "female" as opposed to "secretarial." In addition, plaintiff relies on the testimony of Mr. Chamberlin, which indicated that defendant had a desire to send female sales representatives into the homes of prospective secretarial students.
In presenting the above-described evidence, plaintiff barely established a prima *1539 facie case of discriminatory job assignment. See Johnson v. Bunny Bread Co., 646 F.2d 1250, 1256 (8th Cir.1981). Plaintiff provided some evidence that her new assignment was less desirable to her because of a diminution in her ability to earn comparable commissions. Plaintiff presented evidence that secretarial courses were more difficult to fill than technical courses, but she returned from her suspension with a negative attitude and a much decreased drive to obtain students for defendant. Thus, her decreased earnings were largely self-imposed. The second element to the prima facie case is plaintiff's sex, which is female. Plaintiff's counterpart north of U.S. Highway 40 was also a female. Plaintiff did not establish a per se Title VII violation, however. A per se violation is limited to cases where the prohibited criterion was the sole motivating factor in the employment decision. City of St. Paul, 671 F.2d at 1162; Jefferies v. Harris County Community Action Association, 615 F.2d 1025, 1033 (5th Cir.1980); Houghton, 553 F.2d at 564.
The establishment of a prima facie case by plaintiff shifts the focus of attention to defendant's evidence. Defendant did indeed present legitimate and non-discriminatory reasons for plaintiff's assignment. Defendant expressed a desire to develop its new secretarial program, and plaintiff had been an exceptional sales representative with a secretarial background. In addition, plaintiff's new assignment resulted from a complete reorganization of the marketing department and an attempt to more equitably distribute leads among sales representatives.
In an attempt to establish pretext, plaintiff relies first upon her letter to Mr. Ward, her supervisor. Plaintiff's letter must be discounted because it was written after she filed her original claim with the E.E.O.C. and after Joseph Schelling had been terminated. She used the term "female" in the letter, but her notes reflected that Mr. Ward assigned her to "business" leads. Ward felt the letter was out of place and that he was being "set up" by plaintiff.
Plaintiff additionally relies upon the testimony of Mr. Chamberlin to establish pretext. Chamberlin indicated that defendant had a desire to send female sales representatives into the homes of young secretarial candidates. Yet, Chamberlin did not participate in the decision to assign plaintiff to particular leads. Furthermore, this Court deems that plaintiff's background and experience constitute utmost legitimate reasons for her assignment in view of defendant's need for marketing reorganization. These convincing reasons far outweigh any claims of pretext on behalf of plaintiff. See Fernandez v. Wynn Oil Co., 653 F.2d 1273, 1276 (9th Cir.1981).

5. Retaliation
Finally, plaintiff's claims of retaliation are not supported by the evidence. Plaintiff received her new assignment shortly after she filed charges with the E.E.O.C., yet nothing in the record indicates that the reassignment was motivated by those charges. The reassignment was part of an entire reorganization of the marketing department which affected a number of other employees. The decision to reorganize was made long before plaintiff filed her charges with the E.E.O.C. Moreover, there is substantial evidence that plaintiff's supervisers encouraged her and were accommodating to her. Her sales quota was lowered to allow her to achieve it. Plaintiff did not establish a prima facie case of retaliation; and even if she did, defendant produced sufficient legitimate reasons to rebut any presumption.
This Court views plaintiff as being less than honest with her employer. She attempted to distort her position by tendering a letter to Mr. Ward which contained a number of inaccuracies. She told her employer that she was sick when she interviewed at the office of a competitor, and shortly after her return from the suspension, plaintiff began working for the competitor. Of particular significance, however, is plaintiff's failure to discuss her objections to her job assignment with her employer in an effort to reach a satisfactory solution. Defendant was accommodating to plaintiff, but plaintiff maintained a *1540 hostile attitude. This Court looks with disfavor upon such conduct.