605 F.Supp. 273 (1985)
Michael A. PIERSON, Plaintiff,
v.
NORCLIFF THAYER, INC., Defendant.
No. 84-1060C(1).
United States District Court, E.D. Missouri, E.D.
April 4, 1985.
*274 E. Thomas Liese, St. Louis, Mo., for plaintiff.
Robert C. Ely, St. Louis, Mo., for defendant.

MEMORANDUM
NANGLE, District Judge.
Plaintiff Michael Pierson brought this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. He alleges that defendant engaged in race discrimination by terminating him for his employment and by affording him less *275 favorable job assignments than white employees.
This case was tried to the Court sitting without a jury. The Court having considered the pleadings, the testimony of witnesses, the documents in evidence, and the stipulations of the parties, and being fully advised in the premises, hereby makes the following findings of fact and conclusions of law, as required by Rule 52 of the Federal Rules of Civil Procedure.

A. FINDINGS OF FACT
1. Plaintiff Michael Pierson is a black male resident of the State of Illinois and was at all times relevant herein a citizen of the United States.
2. Defendant Norcliff Thayer is a Delaware corporation which does business in St. Louis, Missouri. Defendant is a manufacturer of cosmetics and other products.
3. Plaintiff was employed by defendant from August 15, 1979, to August 30, 1983, as a material handler. He was terminated on the latter date for the stated reasons that he had a poor attendance record and his job performance was unsatisfactory.
4. As a material handler, plaintiff was responsible for receiving material which passed through a chute from the second floor of defendant's plant to the first floor. Plaintiff was additionally charged with the duties of stacking the material on pallets, transporting the pallets to the shipping area of the plant and attaching load bills to each pallet.
5. At the time of the termination, plaintiff's department was comprised of ten individuals, three white supervisors and seven material handlers. In addition, there was a black group leader. Of the material handlers, only one, John Lato was white. Lou Veres, Tim Carpenter and Ray Fog were the white supervisors.
6. Although plaintiff and John Lato held the same job description, from time to time Lato was assigned additional tasks such as preparing orders on damaged goods, conducting building inspections and going to the post office. Plaintiff considered these tasks to be marginally desirable.
7. On one occasion, plaintiff's supervisor Tim Carpenter ordered plaintiff to remove some cases of material from the work area, when this duty could just as easily have been assigned to John Lato.
8. Plaintiff requested tuition reimbursement of the company for some classes he proposed to take. Plaintiff never made a formal application for such reimbursement, however. Although plaintiff asserts that he was discouraged from applying for such reimbursement, there is no evidence to support this contention.
9. Some racial slurs were directed to plaintiff by his supervisory staff. Lou Veres referred to plaintiff as a nigger. Plaintiff testified regarding a statement made by Ray Fog to the effect that if he (Fog) had matches, he would burn all the blacks in East St. Louis. Fog denied having made this remark, however. Fog is attributed with having additionally stated that he did not like blacks moving into his neighborhood. Also, a temporary employee alluded to plaintiff as a nigger, and John Lato directed a derogatory remark towards plaintiff, as well.
10. Plaintiff's attendance record was very poor. On March 4, 1981, plaintiff was notified regarding the third occurrence of his failure to inform defendant of an impending absence. On December 13, 1982, plaintiff was warned about his excessive break time, tardiness and failure to properly fill out supply tickets. On June 16, 1983, he received notice that he had been charged with five unexcused absences. On August 1 and 2, 1983, plaintiff was absent from work but was tardy in notifying his employer of the absence. He was absent on August 3, without notice, and on August 4, he was likewise absent with a late explanation. On August 25, 1983, plaintiff took an extended lunch break of 20 minutes, and on the following work day, August 29, plaintiff was late to work.
11. Apart from his poor attendance, plaintiff received discipline for other reasons. *276 He dumped some trash into a hopper without informing his superiors. This incident cost defendant Company $9,600.00. He also failed to supply some tube line as instructed. On another occasion, plaintiff refused to do a specific assignment. He then claimed to be sick, and his supervisor was compelled to perform the assigned duties.
12. On August 29, 1983, when plaintiff called in late directly after he had been warned of extended lunch breaks and had received some unexcused absences, the decision to terminate him was made.
13. Plaintiff filed a timely complaint with the EEOC against defendant in accordance with 42 U.S.C. § 2000e-5. He received an unfavorable result and subsequently filed a complaint with this Court.

B. CONCLUSIONS OF LAW
This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3). Defendant is an employer as defined in 42 U.S.C. § 2000e(b).
Plaintiff first alleges that his termination from employment with defendant constituted unlawful race discrimination. In a Title VII claim, the plaintiff has the initial burden of establishing a prima facie case of discrimination. If the plaintiff is successful, the defendant must articulate a legitimate non-discriminatory reason for its actions. The defendant's evidence need only raise a genuine issue of fact regarding discrimination. The burden of coming forth with additional evidence then shifts back to the plaintiff. The plaintiff must show by a preponderance of the evidence that defendant's explanation was merely a pretext for discrimination within the meaning of the statute. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Coleman v. Missouri Pacific Railroad Co., 622 F.2d 408 (8th Cir.1980). Plaintiff bears the ultimate burden of establishing discrimination. United States Postal Service, Board of Governors v. Aikens, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983); Jones v. I.T.T. Educational Services, Inc., 587 F.Supp. 1533, 1538 (E.D.Mo.1984).
This Court concludes that plaintiff has established a prima facie case of discriminatory discharge in that he established (1) he was a member of a protected class, (2) he was capable of performing the job, and (3) he was discharged from the job. Johnson v. Bunny Bread Co., 646 F.2d 1250, 1253 (8th Cir.1981); Osborne v. Cleland, 620 F.2d 195, 198 (8th Cir.1980).
The next step in the analysis is whether defendant Company has articulated a legitimate non-discriminatory reason for the discharge of plaintiff, sufficient to raise a genuine factual issue as to whether plaintiff was discriminated against. Texas Department of Community Affairs v. Burdine, 450 U.S. at 254-55, 101 S.Ct. at 1094. This Court concludes that defendant has met this burden. Defendant presented testimony and exhibits regarding plaintiff's attendance record with the Company. Plaintiff indeed held a long history of unexcused absences and tardiness. His discharge was finally prompted by his late appearance on the day following a period of unexcused absences. This attendance record was sufficiently poor to justify the discharge. In addition, plaintiff's personnel file is replete with counsellings and reprimands regarding his job performance. There is no dispute that plaintiff dumped trash into a hopper or that he failed to deliver the tube line.
Finally, plaintiff is unsuccessful in establishing that defendant's explanation is a pretext for its actual intent to discriminate. Plaintiff did not introduce any evidence that the treatment he received was different from that of white employees. He introduced the attendance record of John Lato, yet Mr. Lato had been employed longer with defendant Company than plaintiff, and did not have the same number of unexcused absences as plaintiff. See Johnson v. Bunny Bread Co., 646 F.2d at 1255. Furthermore, there is no evidence that Mr. *277 Lato's job performance was similar to plaintiff's.
Plaintiff attempts to prove that his termination was motivated by racial concerns through evidence that racial slurs were directed towards him. This evidence is not sufficient to establish pretext, however. The termination was in response to plaintiff's tardiness after a series of unexcused absences. Furthermore, the decision to terminate was reached by Bob Morris, the Company vice president upon the recommendation of Tom Faciszewski, the personnel manager. Plaintiff submitted nothing to imply that these particular individuals were engaged in the practice of directing derogatory language towards him or harbored a racial bias against him. Nor does this Court deem the isolated instances of racial slurs on behalf of several coemployees to establish a pretext for the stated reasons of termination, given plaintiff's attendance record and other occasions of unsatisfactory job performance.
Plaintiff additionally argues that defendant violated 42 U.S.C. § 2000e-2 by racially harassing him. He points to the derogatory language used by his fellow employees, and also contends that he was discouraged from applying for tuition reimbursement, and that he received discriminatory job assignments. From the outset, the record does not support the conclusion that plaintiff was in fact discouraged from applying for tuition refunds. Also, plaintiff does not deem the assignment of additional tasks to Mr. Lato to be sufficiently desirable as to render the assignments discriminatory. Mr. Lato did in fact have more seniority than plaintiff. Furthermore, the derogatory comments do not rise to the level of a violation under Title VII. A working environment dominated by racial slurs, however inexcusable, does constitute a violation of Title VII. An infrequent and sporadic use of such language among employees does not trigger Title VII's protections, however. Id. at 1257; Silver v. KCA, Inc., 586 F.2d 138, 141 (9th Cir.1978); Johnson v. Richmond County, 507 F.Supp. 993, 996 (S.D.Ga.1981). Plaintiff could only point to four specific instances when racially derogatory language was used. This Court is not convinced that plaintiff was subject to such discriminatory working conditions as are violative of Title VII. Johnson v. Bunny Bread Co., 646 F.2d at 1257; Cariddi v. Kansas City Chiefs Football Club, Inc., 568 F.2d 87, 88 (8th Cir.1977). For these reasons, plaintiff is not entitled to Title VII relief.

ORDER
IT IS HEREBY ORDERED, ADJUDGED and DECREED that judgment be and is entered for defendant on plaintiff's complaint and said complaint be and is dismissed with prejudice at plaintiff's costs.