**Ronald SLAUGHTER, Plaintiff,**

v.

**CITY OF MAPLEWOOD, Defendant.**

No. 83–465C(1).

United States District Court,
E.D. Missouri, E.D.

July 5, 1985.

See also, 8th Cir., 731 F.2d 587.

---

Hugh R. Law, Bernard Mellitz, St. Louis, Mo., for plaintiff.

R. Jon Bopp, Ballwin, Mo., Lawrence B. Grebel, St. Louis, Mo., for defendant.

**MEMORANDUM**

NANGLE, Chief Judge.

Plaintiff, Ronald Slaughter, brought this action pursuant to Title VII, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981, and 42 U.S.C. § 1983. He is a former employee of defendant, the City of Maplewood, and alleges that defendant engaged in race discrimination by terminating him from his employment, by affording him less favorable job assignments than white employees, by denying him the privilege of working overtime, and by tolerating insulting racial slurs on behalf of other employees.

The § 1981 and § 1983 claims were tried to a jury which found that the City had not discriminated against plaintiff. Only the Title VII claim remains for this Court's consideration herein. The Court, having considered the pleadings, the testimony of witnesses, the documents in evidence, and the stipulations of the parties, and being fully advised in the premises, hereby makes the following findings of fact and conclusions of law, as required by Rule 52 of the Federal Rules of Civil Procedure.

**A. FINDINGS OF FACT**

1. Plaintiff Ronald Slaughter is a black, male resident of the State of Missouri, and a citizen of the United States.

2. Defendant City of Maplewood is a municipal corporation within the State of Missouri.

3. Ronald Slaughter was employed by defendant from September 10, 1979, to De-

cember 23, 1981, as a truck driver/laborer for the City's Street Department.

4. As a Street Department employee, plaintiff was responsible for maintaining the streets and operating various motor vehicles. He was physically capable of performing all of the tasks assigned to him.

5. Ronald Slaughter had an atrocious employment record with the City of Maplewood, replete with counselings and suspensions. His lack of cooperation with his supervisors was the primary target of these disciplinary actions. On February 12, 1980, plaintiff received a performance evaluation from his supervisor, Mr. Ray Heinsohn which reflected an unsatisfactory performance in the areas of dependability and cooperation. On August 14, 1980, when assigned to assist in blacktopping an area, plaintiff refused to work and walked away from his job. On December 4, 1980, he was suspended because he refused to work upon receiving an assignment which he did not like. Furthermore, he directed some profane language towards two of his supervisors in connection with that incident.

6. Plaintiff had a poor attendance record, as well. He was late to work on numerous occasions. On April 13 and April 20, 1981, he failed to either call in or report to work, and was consequently suspended without pay.

7. Also, in April of 1981, Mr. Slaughter received a directive from the City Manager to prepare a written job description. When he failed to comply with this request, he was suspended for two additional days without pay.

8. Plaintiff contends that he received fewer overtime assignments than other employees, including employees with less seniority than himself. On several occasions, however, plaintiff's supervisor, William Rushing, attempted to contact plaintiff about overtime work, without avail. On one occasion a woman answered the telephone and indicated that plaintiff was not at home. The woman's reply came only after a pause and after she had consulted someone else in the home. Mr. Rushing felt that plaintiff was in fact at home, but had instructed the woman to suggest otherwise. In addition, plaintiff refused an overtime assignment on December 20, 1981. Plaintiff acknowledged that the bulk of overtime assignments were distributed in December of 1981, during a large snowstorm, yet asserts that another white employee with less seniority than himself received an overtime assignment while he did not. This particular individual was not employed by the Department at that time, however. This Court thus concludes that plaintiff's allegations that he was passed over with respect to overtime assignments are not credible.

9. On December 22, 1981, plaintiff's supervisor requested plaintiff to work overtime. Plaintiff refused, directed some foul language towards the supervisor, and turned away. The following day plaintiff was terminated for insubordination by the City Manager, a black female.

10. On December 5, 1980, plaintiff filed a complaint with the Equal Employment Opportunity Commission for race discrimination. The EEOC found that reasonable cause to believe that plaintiff's allegations were true did not exist. Plaintiff elected not to pursue any further action on his complaint.

11. While some racial slurs may have been directed toward plaintiff during his employment with the City of Maplewood, plaintiff never complained to his supervisor William Rushing.

12. No other white employees have an attendance record similar to plaintiff's. In fact, mention was made of two other employees who were terminated during plaintiff's term of employment, both of whom are white. One was terminated for failing to report to work or to call in. The other was terminated for displaying a dangerous weapon.

13. Plaintiff filed a timely complaint with the EEOC against defendant in accordance with 42 U.S.C. § 2000e-5. He received an unfavorable result and subsequently filed a complaint with this Court.

## B. CONCLUSIONS OF LAW

This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e–5(f)(3). In addition, defendant is an employer as defined by 42 U.S.C. § 2000e(b).

■ From the outset, the theory of collateral estoppel applies to this case because a jury denied plaintiff's claims of discrimination under § 1981 and § 1983. As noted by the Eighth Circuit in *Goodwin v. Circuit Court of St. Louis County, Missouri,* 729 F.2d 541, 549 n. 11 (8th Cir.1984), "when § 1983 and Title VII claims are tried jointly, the § 1983 theory to the jury and the Title VII theory to the court, a jury verdict on the issue of discrimination would collaterally estop the parties with respect to that issue on the Title VII claim." *See also Sisco v. J.S. Alberici Construction Co., Inc.,* 655 F.2d 146, 151 (8th Cir.1981), *cert. denied,* 455 U.S. 976, 102 S.Ct. 1485, 71 L.Ed.2d 688 (1982). As discrimination claims brought under § 1981, § 1983 and Title VII require the same elements of proof, *Lewis v. University of Pittsburgh,* 725 F.2d 910, 915 n. 5 (3rd Cir.1983); *Wilson v. Legal Assistance of North Dakota,* 669 F.2d 562, 564 (8th Cir.1982), this Court concludes that it is bound by the jury's finding that defendant did not discriminate against plaintiff.

■ This Court independently concludes, however, that plaintiff's Title VII claim is meritless. In a Title VII claim, the plaintiff has the initial burden of establishing a prima facie case of discrimination. If the plaintiff is successful, the defendant must articulate a legitimate non-discriminatory reason for its actions. The defendant's evidence need only raise a genuine issue of fact regarding discrimination. The burden of coming forth with additional evidence then returns to the plaintiff. The plaintiff must show by a perponderance of the evidence that the defendant's explanation was merely a pretext for discrimination within the meaning of the statute. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v.*

*Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Coleman v. Missouri Pacific Railroad Co.,* 622 F.2d 408 (8th Cir.1980). The plaintiff bears the ultimate burden of establishing discrimination. *United States Postal Service, Board of Governors v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983); *Jones v. I.T.T. Educational Services, Inc.,* 587 F.Supp. 1533, 1538 (E.D.Mo.1984).

■ This Court concludes that plaintiff has established a prima facie case of discriminatory discharge in that he established (1) he was a member of a protected class, (2) he was capable of performing the job, and (3) he was discharged from the job. *Johnson v. Bunny Bread Co.,* 646 F.2d 1250, 1253 (8th Cir.1981); *Osborne v. Cleland,* 620 F.2d 195, 198 (8th Cir.1980).

■ The next step in the analysis is to determine whether defendant City has articulated a legitimate non-discriminatory reason for the discharge of plaintiff, sufficient to raise a genuine factual issue regarding plaintiff's claims of discrimination. *Texas Department of Community Affairs v. Burdine,* 450 U.S. at 254–55, 101 S.Ct. at 1094–1095. This Court concludes that defendant has met this burden. Defendant presented testimony and exhibits regarding plaintiff's attendance record with the City. Plaintiff indeed held a long history of unexcused absences and tardiness, and he was suspended on two occasions for such absences. In addition, he was suspended for failing to comply with a directive of the City Manager, and an employee performance evaluation reflected that he had a habit of talking back to his supervisors. He also walked away from his assigned tasks on two occasions. Finally, when asked to work overtime, he directed foul and profane language towards his supervisor. This Court concludes that these incidents constituted sufficient and non-discriminatory reasons for the City to terminate plaintiff from his employment.

■ Finally, plaintiff cannot establish that defendant's explanation is a pretext for its actual intent to discriminate. Plain-

tiff did not introduce any evidence that the treatment he received was different from that of white employees. Nor did any other employee have a record similar to plaintiff's. Two other white employees were terminated while no black employees were terminated during plaintiff's term of employment. In addition, this Court notes that the City Manager was a black female. *See Johnson v. Bunny Bread Co.,* 646 F.2d at 1255.

Plaintiff suggests that the racial slurs on the part of other employees constitutes evidence of a discriminatory intent. This evidence is not sufficient to establish pretext, however. The termination was in response to plaintiff's insubordination and refusal to cooperate with his supervisor. Furthermore, plaintiff never complained of discrimination to Mr. William Rushing, his supervisor. Mr. Rushing was the individual who recommended termination to the City Manager, yet plaintiff did not submit anything to imply that Mr. Rushing personally used derogatory language or harbored a racial bias against plaintiff.

Plaintiff further asserts that he was assigned to equipment which was in worse condition than the equipment used by white employees. Most of the equipment owned by the City was in a state of disrepair, however, and this Court is not convinced that plaintiff's equipment was more broken or unsafe than that of other employees.

■ Finally, plaintiff claims he was retaliated against for filing his first complaint with the EEOC. This Court concludes, however, that defendant did not retaliate. Mr. Slaughter presented no evidence that he received less favorable and unjustified treatment after filing his EEOC complaint. He thus has failed to establish a prima facie case of retaliation as there is no evidence of a Causal link between his EEOC complaint and his termination or conditions of employment. *McMillan v. Rust College, Inc.,* 710 F.2d 1112, 1116 (5th Cir.1983); *Lewis v. St. Louis University,* 573 F.Supp. 300, 305 (E.D.Mo.1983), *aff'd.,* 744 F.2d 1368 (8th Cir.1984).

Therefore, plaintiff's claims of discrimination fall because he has failed to meet his ultimate burden of establishing that defendant's explanation for the termination is a pretext for its discriminatory intent. Additionally, the record does not contain any evidence of retaliation on defendant's behalf.

■ Defendant seeks an award of attorney's fees under 42 U.S.C. § 1988. An award of attorney's fees for the prevailing party in a Title VII action is available only when the trial court in exercising its discretion finds that the plaintiff's action was frivolous, unreasonable or without foundation. *Christiansburg Garment Co. v. E.E.O.C.,* 434 U.S. 412, 420, 98 S.Ct. 694, 699, 54 L.Ed.2d 648 (1978); *Patzkowski v. United States,* 576 F.2d 134, 138 (8th Cir.1978). This Court concludes that this case is so frivolous, unreasonable and without foundation as to justify an award of attorney's fees to defendant. Plaintiff's employment record was abominable and the facts presented by him in support of his discrimination claim were indeed weak and not credible. Furthermore, when presented with the facts which this Court found to have occurred regarding his employment record, plaintiff conceded that he deserved termination. Under these circumstances, plaintiff deserves to compensate defendant for its expenses in litigating the matter. In addition, such an award may serve as a deterrent to continued baseless claims. *Christiansburg Garment Co. v. EEOC,* 434 U.S. at 421, 98 S.Ct. at 700.

Defendant requests $7,637.00 in attorney's fees, which constitutes 109.1 hours of work at $70.00 an hour. Plaintiff on the other hand is presently unemployed and incapable of satisfying such a judgment. Accordingly, this Court reduces defendant's request for attorney's fees and orders plaintiff to pay $750.00 in attorney's fees to defendant. *Rogers v. Kroger Co.,* 586 F.Supp. 597, 602 (S.D.Tex.1984); *Warren v. Applebaum,* 526 F.Supp. 586, 589 (E.D.N.Y.1981).