668 F.2d 356
 29 Fair Empl.Prac.Cas. 253,
27 Empl. Prac. Dec. P 32,309
Juanita KEYS, Appellant,
v.
LUTHERAN FAMILY AND CHILDREN'S SERVICES OF MISSOURI, Richard
A. Eissfeldt, as an Individual and in his capacity as
Director, Fred T. Marshall, Dorothy Erickson, Norma Jackson,
Richard Cavanagh, Olivette Veal and Marvin Mueller, members
of the Board of Directors, as Individuals, Appellees.
Juanita KEYS, Appellee,
v.
LUTHERAN FAMILY AND CHILDREN'S SERVICES OF MISSOURI, Richard
A. Eissfeldt, as an individual and in his capacity as
Director, Fred T. Marshall, Dorothy Erickson, Norma Jackson,
Richard Cavanagh, Olivette Veal and Marvin Mueller, members
of the Board of Directors, as individuals, Appellants.
 Nos. 81-1013, 81-1054.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 16, 1981.
Decided Dec. 21, 1981.
 
 Michael J. Hoare (argued), Lee T. Lawless, Chackes & Hoare, St. Louis, Mo., for appellant/cross appellee.
 Timothy L. Stalnaker, St. Louis, Mo. (argued), for appellees/cross appellants.
 Before STEPHENSON, Circuit Judge, GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.
 STEPHENSON, Circuit Judge.
 
 
 1
 Appellant Juanita Keys seeks to overturn a summary judgment granted in favor of the defendant-appellee Lutheran Family and Children's Services of Missouri. The district court[1] concluded that although there was a dispute of fact, it was not material. See Rule 56(c), Fed.R.Civ.P. We reverse and remand the case for further proceedings.
 
 
 2
 Juanita Keys, a black female, was dismissed by the defendant organization in January 1979. Keys brought suit[2] claiming that she was discharged because of her race and sex, and in retaliation for having earlier contacted the Equal Employment Opportunity Commission (EEOC). She invoked Title VI and VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d, 2000e, as well as 42 U.S.C. §§ 1981, 1983.
 
 
 3
 Plaintiff began working for the defendant organization in 1974. Keys was the director of the Hilltop Day Care Center, one of the programs operated by the defendant. Keys maintains that her immediate supervisor, Richard Eissfeldt, continually belittled and harassed her. Keys believed she was being singled out for special treatment. Because of these problems perceived by Keys, she filed a complaint with the EEOC in November 1978. In January 1979, the plaintiff was dismissed.
 
 
 4
 Eissfeldt's deposition accompanied the defendants' motion for summary judgment. Eissfeldt, executive director of the defendant organization, stated that the plaintiff regularly failed to provide him with requested budgetary information, that the plaintiff had caused employee morale problems and that there was a general lack of communication between Keys and himself. Eissfeldt did not affirmatively deny in his deposition that the dismissal was based upon race, sex or as retaliation for the plaintiff's contact with the EEOC. In short, the defendants maintained that Keys was dismissed because of her poor job performance and her inability to cooperate with Eissfeldt.
 
 
 5
 In sharp contrast, Keys testified in her deposition that she had performed all of her duties in a satisfactory and capable manner. She disagreed with Eissfeldt's testimony on each specific point. The plaintiff stated that the budget information had been filed on time, that she believed employee morale had improved and that she had made every effort to work with Eissfeldt but that the executive director was responsible for the lack of communication.
 
 
 6
 Thus, the affidavits and depositions pose a clear dispute of facts concerning the reason for Keys' dismissal.[3]
 
 
 7
 The district court noted that this dispute existed but held that this disagreement did not concern a material fact. The court wrote, "(T)here is no evidence in the record that plaintiff's race or sex or E.E.O.C. charge was a factor in her discharge." (Emphasis in original.)
 
 
 8
 The standards and scope of review for this court to apply are well settled. Summary judgment should not be entered by the district court or affirmed by this court unless the pleadings, stipulations, affidavits and admissions in the case show that there exists no genuine issue as to any material fact. It is an extreme remedy that is not appropriate unless the moving party has established its right to a judgment with such clarity as to leave no room for controversy and unless the other party is not entitled to recover under any discernible circumstances. The court is required to view the facts in the light most favorable to the party opposing the motion. Vette Co. v. Aetna Casualty & Surety Co., 612 F.2d 1076, 1077 (8th Cir. 1980). See Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 1608-09, 26 L.Ed.2d 142 (1970).
 
 
 9
 The factual dispute in this case goes directly to the second phase of a Title VII case, that is, the issue of whether the defendant has set forth through admissible evidence a legitimate non-discriminatory reason for discharging the plaintiff. See Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 1093-95, 67 L.Ed.2d 207 (1981); Vaughn v. Westinghouse Electric Corp., 620 F.2d 655, 657 (8th Cir. 1980), vacated on other grounds, 450 U.S. 972, 101 S.Ct. 1504, 67 L.Ed.2d 808 (1981). Without stating any position on whether the plaintiff has demonstrated a prima facie case, it is nevertheless clear that the nature of Keys' job performance as a factor in her dismissal is a factual dispute relating to a material issue. Further, where motive, intent and credibility are key factors summary judgment is generally inappropriate. See Pfizer, Inc. v. International Rectifier Corp., 538 F.2d 180, 185 (8th Cir. 1976), cert. denied, 429 U.S. 1040, 97 S.Ct. 738, 50 L.Ed.2d 751 (1977). See also Romero v. Union Pacific Railroad, 615 F.2d 1303, 1309 (10th Cir. 1980) ("the question of retaliation is particularly inappropriate for summary judgment disposition, since the primary issue is one of intent and motive").
 
 
 10
 The appellees argue that in her deposition the plaintiff did not attribute Eissfeldt's actions to her race or sex or as retaliation for having filed the EEOC charge. They emphasize that another black female was promoted to replace Keys. Finally, appellees suggest that material issues in this case would relate only to whether the plaintiff was terminated on account of her race, on account of her sex or because she filed an EEOC charge and not to the nature of the plaintiff's job performance.
 
 
 11
 The appellees thus demonstrate a misunderstanding of Title VII law. As noted above, the nature of the plaintiff's job performance goes directly to the question of whether the defendant can present a legitimate non-discriminatory reason for dismissing Keys. The Supreme Court explains in Burdine that the crucial question in these cases is what was the reason for the employment decision. See Texas Department of Community Affairs v. Burdine, supra, 101 S.Ct. at 1093-94. The Court writes that after a prima facie case is established the "defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's (dismissal)." Id. (emphasis added). In the case at bar, the district court recognized that the quality of the plaintiff's job performance and thus the reason for her dismissal was disputed. This fact is material in a Title VII case. Thus, if the trier of fact believes the defendant concerning the reason for the dismissal, then the plaintiff will not be allowed to recover. However, if this proffered explanation is not believed, then the plaintiff has taken a major step toward demonstrating discrimination. The question of the plaintiff's job performance is often times the crucial part of a Title VII case. See, e.g., Coleman v. Missouri Pacific Railroad, 622 F.2d 408, 410 (8th Cir. 1980).
 
 
 12
 The retaliation claim in this case is particularly inappropriate for resolution by summary judgment. Generally, a prima facie case of retaliatory discharge is made out by showing four elements: (1) that the plaintiff filed a charge with the EEOC, (2) the defendants were aware of this charge, (3) the plaintiff was subsequently dismissed, and (4) the date of the discharge followed the protected activity (the filing of the charge) so closely as to justify an inference of a retaliatory motive. Womack v. Munson, 619 F.2d 1292, 1296 n.6 (8th Cir. 1980).
 
 
 13
 In the case at bar, Keys filed a charge with the EEOC on November 20, 1978. Less than two months later, on January 11, 1979, the plaintiff was discharged. It is our view that the plaintiff has presented a prima facie case, at least with regard to the retaliation claim. The defendants' response to this apparent prima facie case will likely be to argue that the plaintiff was not dismissed in retaliation but because of her job performance. This is one of the facts that the depositions indicate is in dispute. This demonstrates that there is a genuine issue of material fact. See Romero v. Union Pacific Railroad, supra, 615 F.2d at 1309.
 
 
 14
 That summary judgment is inappropriate in this case is further shown by the principle that an "impermissible discrimination exists even if bias is merely a contributing factor rather than the sole factor in the employer's decision." Coleman v. Missouri Pacific Railroad, supra, 622 F.2d at 410 (citing cases).
 
 
 15
 We conclude, therefore, that there is a genuine issue of material fact and that the defendant is not entitled to a judgment as a matter of law. Also, in the matter of the defendants' cross-appeal of the district court's refusal to grant attorney's fees, the district court's decision is affirmed. The above discussion makes clear that this action is not "frivolous, unreasonable, or without foundation." See Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978).
 
 
 16
 Although we express no opinion as to the ultimate merits of this case, we are convinced it should not have been disposed of by summary judgment.
 
 
 17
 Reversed and remanded for further proceedings.
 
 
 18
 FLOYD R. GIBSON, Senior Circuit Judge, concurring in part and dissenting in part.
 
 
 19
 I believe the majority errs in not addressing the issue of whether a prima facie case of discrimination was made. I dissent because it does not appear to me that a prima facie case was presented, and thus summary judgment was appropriate. I concur in affirming the denial of an award of attorney's fees.
 
 
 20
 The majority finds that there is a factual dispute going to the second phase of a Title VII case, whether the defendant had a legitimate, nondiscriminatory reason for discharging the plaintiff. The majority did not address the first phase, whether a prima facie case was made. P. ----, ante. This question should have been addressed. If the plaintiff failed to establish a prima facie case, summary judgment would be appropriate. The second phase is activated only after a prima facie case has been made. McDonnell Douglas Corporation v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); Cartagena v. Secretary of Navy, 618 F.2d 130, 133 (1st Cir. 1980).
 
 
 21
 The elements of a prima facie case for employment discrimination in hiring were set out in McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824, and were adapted to discriminatory discharge claims in Osborne v. Cleland, 620 F.2d 195, 198 (8th Cir. 1980). The plaintiff must show he is a member of a protected class, he was capable of performing his employment duties, he was discharged, and his employer sought people with his qualifications to fill his former job. The McDonnell Douglas test is not intended to be an inflexible formulation. Teamsters v. United States, 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977). Rather, it sets forth elements which, if proved, would allow one to infer that the reason for the employment action was more likely than not discrimination. Furnco Construction Corp. v. Waters, 438 U.S. 567, 576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). To phrase the McDonnell Douglas test in another way, when a qualified member of a protected class is rejected, one can infer that discrimination is probably the reason.
 
 
 22
 Under the facts in the instant case, there is a reason to reject the inference of discrimination: the plaintiff was replaced by a person of her own sex and race. The court below was not required to adopt the McDonnell Douglas inference. When a plaintiff is replaced by a person of the plaintiff's race and sex, satisfaction of the McDonnell Douglas test does not necessarily raise an inference of discrimination. McDonnell Douglas did not address the relevance of the race or sex of the person who ultimately acquires a particular job. The issue apparently was not raised before the Court. In all likelihood it would not have been useful. The facts, that the McDonnell Douglas plaintiff applied in response to an advertisement and McDonnell Douglas employs over 30,000 people, 411 U.S. at 794-96, 93 S.Ct. at 1820-21, indicate that many positions were being filled. Unless these positions were all filled by blacks, McDonnell Douglas could not assert that the plaintiff was turned down for another black. Likewise, Osborne v. Cleland, supra, does not mention a specific replacement for the plaintiff.
 
 
 23
 I do not mean to suggest that replacement of a discharged member of a protected class with a member of the same class or classes necessarily defeats a discrimination claim. Other factors could indicate that the discharge was discriminatory. The trial court should in the first instance evaluate the allegations of discrimination. I simply point out that when a plaintiff in a discriminatory discharge suit alleges sexual and racial discrimination, and is replaced by a person of the same sex and race, a trial court need not infer that the reason for the discharge was sexual or racial discrimination.
 
 
 24
 I also want to clarify what is the proper standard for the district court to apply on remand. The district court will have to determine whether discrimination was a "contributing factor" to Keys' discharge. Coleman v. Missouri Pacific Railroad Co., 622 F.2d 408, 410 (8th Cir. 1980). This means the plaintiff must show that she was treated differently because of her race or sex. In other words, race or sex must be shown to be a "but for" cause of the discharge. McDonald v. Santa Fe Trail Transportation Co., 427 U.S. 273, 282 n.10, 96 S.Ct. 2574, 2580, 49 L.Ed.2d 493 (1976).
 
 
 25
 The appellees have noted that Keys was replaced by a black female, and the clientele and other employees of the appellees' day care center are mostly black women. Although these factors do not alone warrant a summary judgment, they are adverse to Keys' claim and they suggest that she has a hard case to prove. In other words, it is difficult to read any sexual or racial bias in this factual situation. Additional factors indicating racial or sexual bias should be necessary in this factual context to make out a prima facie case.
 
 
 26
 My main concern with this borderline type of litigation, if the case is frivolous, is the harm that will come to the poor in the community served by the appellees. Lutheran Family and Children's Services is a not-for-profit social services agency serving the St. Louis community. The day care center at which Keys worked primarily serves the black community. At a time of inflation, recession, and budget cuts, a diversion of funds from community services to court costs and legal fees incurred in defense of a frivolous suit would be tragic.
 
 
 27
 Finally, I concur in the decision to affirm the district court's denial of attorney's fees on the grounds that it was not an abuse of discretion.[1] However, the fact that a case goes to trial does not preclude an award of attorney's fees. See Harris v. Plastics Manufacturing Co., 617 F.2d 438, 440 (5th Cir. 1980). After the district court disposes of the case, it can determine whether the action was so frivolous as to warrant an award of attorney's fees. See Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978). I do not read the majority opinion as precluding an award of attorney's fees by the district court after its disposition of the case.
 
 
 
 [1]
 The Honorable Edward L. Filippine, United States District Judge for the Eastern District of Missouri, presiding
 
 
 [2]
 The complaint named the Lutheran Family and Children's Services of Missouri, its executive director and the members of the organization's board of directors as defendants
 
 
 [3]
 The summary judgment motion was based on the depositions of the plaintiff and Eissfeldt. The plaintiff did not file a response to the motion
 
 
 [1]
 Attorney's fees awards are permitted under 42 U.S.C. § 2000e-5(k) (1976): "(T)he court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee ...."