# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-2433

_____

| | |
|---|---|
| Paul J. Kiel, | * |
| | * |
| Appellant, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * Eastern District of Missouri. |
| Select Artificials, Inc., | * |
| | * |
| Appellee. | * |

_____

Submitted: September 23, 1998

Filed: March 4, 1999

_____

Before BOWMAN, Chief Judge, HEANEY, BRIGHT, McMILLIAN, RICHARD
S. ARNOLD, FAGG, WOLLMAN, BEAM, LOKEN, HANSEN, MORRIS
SHEPPARD ARNOLD, MURPHY, and KELLY,[1] Circuit Judges, En Banc.

_____

WOLLMAN, Circuit Judge.

Paul Kiel brought this suit under the Americans with Disabilities Act (ADA),
42 U.S.C. § 12101 et seq., and the Missouri Human Rights Act (MHRA), Mo. Rev.
Stat. § 213.010 et seq., against his employer, Select Artificials, Inc. (Select). The

_____

[1]The Honorable John D. Kelly died on October 21, 1998. This opinion is
consistent with his vote at the conference following argument on September 23, 1998.

district court[2] granted summary judgment in favor of Select on all claims. Kiel appealed, and a divided panel of this court reversed and remanded for trial. See Kiel v. Select Artificials, Inc., 142 F.3d 1077 (8th Cir. 1998). We granted Select's petition for rehearing en banc, vacating the panel opinion. We now affirm the decision of the district court.

## I.

Kiel has been deaf since birth. He was employed at Select as a billing clerk from January 1992 to February 1994. On several occasions he requested that Select purchase a telecommunications device (TDD) that would enable him to make business and personal telephone calls. Select did not provide the device because Kiel did not need it to perform his duties as a billing clerk. Although hearing employees occasionally communicated with clients by telephone, Select decided that Kiel's supervisor could make client calls for him when they were needed. Kiel was allowed to make personal calls during breaks on those occasions when he brought his TDD from home.

Kiel also requested that Select provide him a sign-language interpreter for staff meetings and social gatherings. Select did not normally provide an interpreter because one was not needed to enable Kiel to perform his job duties. On one occasion, however, Kiel requested an interpreter prior to a training session related to his position, whereupon Select provided one for him.

On February 17, 1994, Kiel photocopied a letter that he had drafted to Robert Fry, co-owner of Select, again requesting that the company purchase a TDD. After

---

[2]The Honorable Terry I. Adelman, United States Magistrate Judge for the Eastern District of Missouri, who presided over the case by consent of the parties pursuant to 28 U.S.C. § 636(c).

observing Kiel at the photocopier, Julie Fry, the other co-owner of Select, approached him at his work station to inquire about his use of the copier. Kiel informed Ms. Fry that he was requesting that the company purchase a TDD. She told him that Select would not purchase the device. Visibly frustrated and upset, Kiel shouted at Ms. Fry, "You're selfish, you're selfish." He then slammed his desk drawer, and as Ms. Fry walked away he made a remark about her recent purchase of a new automobile. Four other employees were present when Kiel did this. According to the employee witnesses, the episode lasted "a few minutes."

Later that day, Ms. Fry asked Kiel if he realized that he had yelled at her in front of other employees. He said that he was not aware that he had raised his voice and apologized for doing so. After conferring with Mr. Fry, Ms. Fry decided to terminate Kiel for insubordination despite his apology.

Kiel raised claims of discriminatory discharge, retaliatory discharge, and failure to accommodate under the ADA and the MHRA. The district court concluded that Kiel did not produce evidence showing that Select's non-discriminatory reason for terminating Kiel, insubordination, was pretextual. It also held that the temporal connection between Kiel's letter requesting a TDD and his termination was insufficient to demonstrate retaliatory intent and that Select had not failed to accommodate Kiel.

## II.

We review a grant of summary judgment de novo. Price v. S-B Power Tool, 75 F.3d 362, 364 (8th Cir.), cert. denied, 519 U.S. 910 (1996). Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, we view the evidence and draw all justifiable inferences in

favor of the nonmoving party.  See Miners v. Cargill Communications, Inc., 113 F.3d 820, 823 (8th Cir.), cert. denied, 118 S. Ct. 441 (1997).

In an employment discrimination case, the plaintiff must initially present a prima facie case to survive a motion for summary judgment.  See Lidge-Myrtil v. Deere & Co., 49 F.3d 1308, 1310 (8th Cir. 1995) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973)).  The employer must then rebut the presumption of discrimination by articulating a legitimate, non-discriminatory reason for the adverse employment action.  See Lidge-Myrtil, 49 F.3d at 1310.  If the employer does this, the burden of production shifts back to the plaintiff to demonstrate that the employer's non-discriminatory reason is pretextual. Id. at 1311.

To make out a prima facie case under the ADA, Kiel was required to show that he is disabled within the meaning of the ADA, that he is qualified to perform the essential functions of his position, and that he suffered an adverse employment action under circumstances giving rise to an inference of unlawful discrimination. Price, 75 F.3d at 365.  Generally, evidence that a plaintiff was replaced by a similarly situated employee who is not disabled is sufficient to support an inference of discrimination. Id.  Select did not dispute that Kiel was disabled or that he was qualified to perform his duties as billing clerk, and Kiel established that he was replaced by a hearing employee.  Thus, Kiel met his initial burden under McDonnell Douglas.

The burden of production then shifted to Select to articulate a legitimate, non-discriminatory reason for Kiel's termination.  Select stated that it terminated Kiel because he insulted Ms. Fry, slammed his desk drawer, and made a sarcastic remark about Ms. Fry in the presence of four co-workers.  Our cases have repeatedly held that insubordination and violation of company policy are legitimate reasons for termination. See Ward v. Procter & Gamble Paper Prods. Co., 111 F.3d 558, 560 (8th Cir. 1997) (employee terminated for striking a co-worker); Price, 75 F.3d at 365-66 (employee terminated for excessive absenteeism); Lidge-Myrtil, 49 F.3d at 1310-11

(employee not chosen for promotion because of poor relationship with co-workers and violation of company policy); Miner v. Bi-State Dev. Agency, 943 F.2d 912, 913-14 (8th Cir. 1991) (employee terminated for insubordination and violating various company policies).

Select having proffered a non-discriminatory reason for terminating Kiel, the burden shifted to Kiel to present evidence that Select's reason was pretextual. See Lidge-Myrtil, 49 F.3d at 1311. In essence, Kiel was required to show a genuine issue of material fact as to whether Select actually fired him because of his disability. Id. Although it is possible for strong evidence of a prima facie case to also present a factual issue on pretext, see Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1333-37 (8th Cir. 1996), the ultimate question is whether the plaintiff presents evidence of "conduct or statements by persons involved in [the employer's] decision-making process reflective of a discriminatory attitude sufficient to allow a reasonable jury to infer that that attitude was a motivating factor in [the employer's] decision to fire [the plaintiff]." Feltmann v. Sieben, 108 F.3d 970, 975 (8th Cir. 1997) (citing Nelson v. J.C. Penney Co., 75 F.3d 343, 345 (8th Cir. 1996)).

Kiel did not submit any evidence of pretext in this case. He relied entirely on his prima facie case to challenge Select's non-discriminatory reason. The bare assertion that Select hired a hearing employee to replace Kiel did not raise a genuine factual issue regarding Select's discriminatory intent, for Kiel did not point to any conduct or statements by the Frys that would permit a reasonable jury to find that insubordination was a mere pretext for his termination. Nor did he demonstrate that the Frys disciplined hearing employees less severely for insubordinate conduct. As for Kiel's assertion that he did not realize he was shouting, he himself testified that "If I want to shout, I shout," which is consistent with the co-workers' testimony that they had never heard him raise his voice. In short, there is simply no evidence that discrimination was a motivating factor in Kiel's termination.

Kiel contends that his discriminatory discharge claim falls within the mixed-motive analysis of Price Waterhouse v. Hopkins, 490 U.S. 228, 248-50 (1989). To trigger Price Waterhouse analysis, however, a plaintiff must show that "an impermissible motive played a motivating part in an adverse employment decision." Id. at 250. We have interpreted this to require a plaintiff to present, at a minimum, some direct evidence of discriminatory motive. See Thomas v. First Nat'l Bank, 111 F.3d 64, 65-66 (8th Cir. 1997); Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 780-81 (8th Cir. 1995). Because Kiel relied entirely on circumstantial evidence to establish the existence of a discriminatory motive on Select's part, the district court was correct in reviewing Kiel's claim solely under the McDonnell Douglas framework. In light of Kiel's failure to establish a genuine factual issue on pretext, the district court properly granted Select summary judgment on the discriminatory discharge claim.

## III.

To present a prima facie case of retaliation, a plaintiff must show that he engaged in protected conduct, that he suffered an adverse employment action, and that the adverse action was causally linked to the protected conduct. See Montandon v. Farmland Indus., Inc., 116 F.3d 355, 359 (8th Cir. 1997); Evans v. Kansas City, Mo. Sch. Dist., 65 F.3d 98, 100 (8th Cir. 1995). Although contesting an unlawful employment practice is protected conduct, the anti-discrimination statutes do not insulate an employee from discipline for violating the employer's rules or disrupting the workplace. See Evans, 65 F.3d at 102 (quoting Booker v. Brown & Williamson Tobacco Co., 879 F.2d 1304, 1312 (6th Cir. 1989)); Valdez v. Mercy Hosp., 961 F.2d 1401, 1403 (8th Cir. 1992); Jackson v. St. Joseph State Hosp., 840 F.2d 1387, 1390 (8th Cir. 1988). Generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation. See Feltmann, 108 F.3d at 977; Nelson, 75 F.3d at 346-47.

Kiel's requests for a TDD were protected communications. Insulting Ms. Fry and indulging in an angry outburst in the presence of co-workers, however, were certainly not, for the ADA confers no right to be rude. Kiel's intervening unprotected conduct eroded any causal connection that was suggested by the temporal proximity of his protected conduct and his termination.

Kiel presented no evidence of conduct or statements that would permit a reasonable jury to find that Select actually fired him because he requested a TDD. Indeed, he had requested a TDD on numerous occasions, but he suffered no adverse employment action until he engaged in abusive, derogatory conduct towards his employer. Kiel did not allege that Select disciplined other employees less harshly for insubordinate conduct. Nor did he show a history of discrimination at Select that would present a genuine factual issue on retaliatory intent. Rather, the record showed that Select has hired a number of deaf employees, has altered job duties to accommodate deaf employees, and has maintained a satisfactory working relationship with deaf employees. In sum, there is simply no evidence from which a reasonable jury could find that Select terminated Kiel in retaliation for his exercising any rights granted to him by the ADA.

Kiel argues that summary judgment was improper because a jury should decide whether his conduct was egregious enough to warrant termination. In the absence of any evidence of discriminatory intent, however, it is not the prerogative of the courts or a jury to sit in judgment of employers' management decisions. See Montandon, 116 F.3d at 360. "[T]he employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." Hutson, 63 F.3d at 781.

## IV.

The ADA requires employers to make reasonable accommodations to allow disabled individuals to perform the essential functions of their positions. See 42 U.S.C. § 12111(8)-(9). A reasonable accommodation should provide the disabled individual an equal employment opportunity, including an opportunity to attain the same level of performance, benefits, and privileges that is available to similarly situated employees who are not disabled. See 29 C.F.R. § 1630.9 (Appendix) (1998). If more than one accommodation would allow the individual to perform the essential functions of the position, "the employer providing the accommodation has the ultimate discretion to choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide." Id.

Select provided Kiel a reasonable accommodation by restructuring the billing clerk position. Although providing Kiel a TDD would also have constituted an effective accommodation, Select chose to have Kiel's supervisor make the minimal number of client telephone calls that were required. This accommodation allowed Kiel an equal employment opportunity at Select. An interpreter was not required for Kiel to perform the essential functions of his position, and on the one occasion that a training session was relevant to Kiel's position, Select provided him an interpreter. Accordingly, summary judgment was proper on Kiel's failure to accommodate claim.

Because Kiel's claims under the Missouri Human Rights Act are premised on the same factual bases as his ADA claims, they must also fail. See Finley v. Empiregas, Inc., 975 F.2d 467, 473 (8th Cir. 1992) (holding that federal employment discrimination decisions are authoritative for claims under the MHRA); Midstate Oil Co. v. Missouri Comm'n on Human Rights, 679 S.W.2d 842, 845-46 (Mo. 1984) (en banc) (same).

The judgment is affirmed.

MORRIS SHEPPARD ARNOLD, Circuit Judge, dissents.

HEANEY, Circuit Judge, with whom BRIGHT and McMILLIAN, Circuit Judges join, dissenting.

The majority asserts that summary judgment was appropriately granted to Select because Kiel was insubordinate as a matter of law, Select reasonably accommodated Kiel in his job as a matter of law, and that Kiel's claim must fail as a matter of law because it was unsupported by direct evidence. In my view, the majority is wrong in each respect, and this court should reverse the district court's grant of summary judgment and remand for trial. Accordingly, I respectfully dissent.

"Courts have recognized the difficulty in disposing of issues of discriminatory or retaliatory intent at the summary judgment stage: 'Summary judgments should be sparingly used and then only in those rare instances where there is no dispute of fact and where there exists only one conclusion. All the evidence must point one way and be susceptible of no reasonable inferences sustaining the position of the nonmoving party.'" Davis v. Fleming Companies, Inc., 55 F.3d 1369, 1371 (8th Cir. 1995) (quoting Johnson v. Minnesota Historical Soc'y, 931 F.2d 1239, 1244 (8th Cir.1991)); see also Gill v. Reorganized Sch. Dist. R-6, 32 F.3d 376, 378 (8th Cir.1994) (reviewing summary judgment "with caution in employment discrimination cases . . . because intent is inevitably the central issue"); Keys v. Lutheran Family & Children's Servs. of Mo., 668 F.2d 356, 358 (8th Cir. 1981) (noting in retaliation case that "where motive, intent and credibility are key factors summary judgment is generally inappropriate.") Additionally, the United States Supreme Court has directed that "[t]here will seldom be 'eyewitness' testimony as to the employer's mental processes." United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 716 (1983). Faced with this formidable standard and the record before it, the district court approached the summary judgment motion hearing with caution, stating: "I think if there is a legitimate non-discriminatory reason given [for Kiel's termination], . . . then I think that this is a case that's close for summary judgment. Maybe it could be granted, maybe it should be granted, but if it's not a legitimate non-discriminatory

reason, not legitimate, then obviously the case goes to the jury." (Summ. J. Mot. Hr'g Tr. at 40-41.)

The majority finds that legitimate reason by concluding Kiel was insubordinate as a matter of law. I disagree. The ADA prohibits discrimination "against any individual because such individual has opposed any act or practice made unlawful by [the ADA]." 42 U.S.C. § 12203(a) (1998). In determining whether an employee was insubordinate, the question is whether the employee's conduct "was so disruptive, excessive, or 'generally inimical to [the] employer's interests . . . as to be beyond the protection'" of the ADA. Kempcke v. Monsanto Co., 132 F.3d 442, 445 (8th Cir. 1998) (quoting Hochstadt v. Worcester Found. for Experimental Biology, 545 F.2d 222, 230 (1st Cir. 1976)); see also Jennings v. Tinley Park Community, 796 F.2d 962, 968 (7th Cir. 1986) (applying a reasonableness test to determine whether "disloyal" conduct could provide a legitimate basis for discharge because "almost every form of opposition to an employment practice is in some sense disloyal" and if "mere 'disloyal' conduct could provide a legitimate basis for discharge, the protection extended by [anti-discrimination statutes] would be severely limited"). In Payne v. McLemores Wholesale & Retail Stores, the Fifth Circuit observed that it is part of a defendant's rebuttal case to establish that "the form of plaintiff's opposition was unprotected by the statute." 654 F.2d 1130, 1142 (5th Cir. 1981) (citing Rosser v. Laborers' Int'l Union, Local 438, 616 F.2d 221, 223-24 (5th Cir. 1980); Jeffries v. Harris County Community Action Ass'n, 615 F.2d 1025, 1035-37 (5th Cir. 1980); Hochstadt, 545 F.2d at 229-34). Courts have required that oppositional employee conduct "be reasonable in light of the circumstances, and have held that 'the employer's right to run his business must be balanced against the rights of the employee to express his grievances and promote his own welfare.'" Jeffries, 615 F.2d at 1036 (quoting Hochstadt, 545 F.2d at 233).

The majority concedes that Kiel's request for the TDD was protected activity, but concludes that the subsequent comment that Ms. Fry was selfish was

-11-

unreasonable as a matter of law.[3] Kiel was a good employee who had been with the company for more than two years and had never been subject to formal disciplinary action. On February 17, 1994, Kiel drafted a letter requesting that Mr. Fry provide Select's deaf employees with a TDD. Kiel made copies to show the other deaf employees at Select. After making the copies, he returned to his desk and put the letter in his drawer. Ms. Fry approached Kiel and chastised him for making personal copies at the office notwithstanding the fact that she had never told Kiel that he could not use the copy machine for personal documents. (See Ms. Fry 9/29/95 Dep. at 9.) Moreover, other employees used the copier for personal use and Select did not have a policy against such use. (See Fritz 9/20/95 Dep. at 38; Mr. Fry 9/21/95 Dep. at 16.) February 17, 1994 was the first time Kiel formally requested a TDD, and Ms. Fry admitted that she was not aware that Kiel had approached anyone else with the same request. (See Ms. Fry 9/20/95 Dep. at 36.) Ms. Fry refused Kiel's request for a TDD as a reasonable accommodation for his disability, whereupon Kiel stated that she was selfish. Shortly after this exchange, Kiel apologized for his statement, and Ms. Fry accepted his apology. (See Kiel 9/20/95 Dep. at 50.)

---

[3]This concession is at odds with the position of Select's counsel at oral argument. Counsel conceded that the content, not the manner, of Kiel's comment constituted insubordination:

> Judge Heaney: [I]s it your position that the result would be the same if he had spoken in a well-modulated voice?
> Mr. Gianoulakis: I think very clearly it was the content of what he said that was the problem here. If he had shouted at the president, "This is the best company I've ever worked for, and you're the best president I've ever worked for," I submit to you we wouldn't be here today.

Clearly, counsel's position is not the law. If it were, no deaf person would ever have the right to oppose his employer's denial of a requested reasonable accommodation for the employee's deafness. In my view, counsel's concession alone required that we reverse the district court's grant of summary judgment.

The majority concludes that Kiel was insubordinate as a matter of law by characterizing Kiel's statement as insulting, angry, and rude. While a jury might agree with this conclusion, the record certainly does not support the view that Kiel's reaction to Ms. Fry was insubordinate as a matter of law. Unlike the majority, I am unwilling to declare that opposing the denial of a reasonable accommodation request by declaring that an employer is selfish is unreasonable as a matter of law.[4] Kiel did not use profanity or engage in any conduct that could be considered unreasonable as a matter of law. The majority ignores the requirement at the summary judgment stage of viewing the evidence and drawing all justifiable inference in Kiel's favor. See Miners v. Cargill Communications, Inc., 113 F.3d 820, 823 (8th Cir.), cert. denied, 118 S. Ct. 441 (1997). Kiel stated both at the time of the incident and afterward that he did not realize he was shouting. Nonetheless, the majority cites his statement that "If I want to shout, I shout," and concludes that he was lying. This conclusion is simply inappropriate. There is no necessary inconsistency in a person, deaf or otherwise, being capable of shouting when they choose to and not realizing that they are shouting on a particular occasion. At the very least, the issue is one for a jury to resolve, not an appellate court without the benefit of live testimony.

The majority also ignores the Payne line of cases, which hold that a handicapped employee may only be discharged for seeking a reasonable accommodation when his behavior is so disruptive, excessive, or generally inimical to the employer's interests as to be beyond the protection of the ADA. That is an issue to be determined by the jury, not by the court as a matter of law. Accordingly, I would hold that the district court erred because Select failed to meet its burden of establishing a legitimate, non-discriminatory reason for its decision to terminate Kiel.

---

[4]It may be that, in certain cases, the declaration that an employer is selfish can constitute insubordination for the purposes of summary judgment. Nonetheless, I do not believe that to be the case here.

The majority also concludes as a matter of law that Select reasonably accommodated Kiel's disability. The majority states that Select did so by eliminating from his job the need to make business phone calls and providing him with an interpreter on one occasion so that he could participate in United Parcel Service training. In my view, the court erred by holding that Kiel had been reasonably accommodated as a matter of law. The record reveals that, as to employee meetings, Kiel was not provided with an interpreter and, arguably therefore, a way to function meaningfully as an employee.[5] Also, almost immediately after Kiel's termination but prior to this litigation, Fry asked Wendy Sheu to obtain a TDD for its remaining deaf employees. The reasonableness of Kiel's request is illustrated by the fact that Select obtained a TDD shortly after his termination. Unlike the majority, I am unable to draw any conclusions as a matter of law from these facts regarding reasonable accommodation. The question of reasonable accommodation is for a jury to decide, not a court of appeals–even one sitting en banc.

---

[5]At the summary judgment motion hearing, Kiel's counsel stated:

> Mr. Kiel testified in his deposition that he didn't know those meetings were going to take place until they called all the employees together to have the meetings. Who did know that the meetings were going to take place? The company knew that they were planning to have a meeting and could have arranged an interpreter to be there, or could have given Mr. Kiel one day's notice and ask him if he wanted an interpreter for the meeting. But to say that Mr. Kiel didn't put in a timely request for an interpreter for meetings that he was not given advance notice were going to take place, is requiring him to be clairvoyant.

(Summary J. Mot. Hr'g. Tr. at 24.) (See also Kiel 9/20/95 Dep. at 40 ("I wanted to know what was going on [at the meetings]. I wanted equal treatment."); id. at 41 ("I just do my job until someone said go in that room, and I found a group was talking . . . . I asked [Terry Fritz] what was going on . . . . [to which] [s]he shrugged her shoulders. That's her response. That's the only response I got."); id. at 41-42 ("Well, if we had a meeting, I would like to be kept informed of what's going on. I'd like to be part of the team."))

The majority holds that Kiel is incapable of showing pretext because he failed to produce direct evidence that Mr. or Ms. Fry made statements or engaged in conduct reflecting a discriminatory attitude and that such an attitude motivated them to dismiss Kiel. It relies on Feltmann v. Sieben, 108 F.3d 970, 975 (8th Cir. 1997), and Nelson v. J.C. Penney Co., 75 F.3d 343, 345 (8th Cir. 1996), for this proposition. I believe that the majority is in error in this regard because direct evidence is not the only method for satisfying the fundamental inquiry in this case. The ultimate issue is whether Select intentionally discriminated against Kiel. See Ryther v. KARE 11, 108 F.3d 832, 838 (8th Cir. 1997) (en banc); Kehoe v. Anheuser-Busch, Inc., 96 F.3d 1095, 1101 (8th Cir. 1996); Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1334 (8th Cir. 1996). "The requisite causal connection may be proved circumstantially by proof that the discharge followed the protected activity so closely in time as to justify an inference of retaliatory motive." Roth v. Selection Research, Inc., 978 F.2d 1087, 1090 (8th Cir. 1992); see also Couty v. Dole, 886 F.2d 147, 148 (8th Cir. 1989) (including proof that time of discharge closely followed protected activity in prima facie case of retaliatory discharge claim); Keys, 668 F.2d at 358 (same). Moreover, Kiel's initial evidence is properly considered in evaluating Select's explanation for its action. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 255 n.10 (1981) (Initial "evidence and inferences properly drawn therefrom may be considered by the trier of fact on the issue of whether the defendant's explanation is pretextual"). Select is not entitled to summary judgment simply because it declared that Kiel was insubordinate. Rather, the question is whether a reasonable jury could conclude that Select intentionally discriminated against Kiel. In my view, a reasonable jury construing the facts and all reasonable inferences therefrom in the light most favorable to Kiel could conclude that Select intentionally discriminated against Kiel. In this case, Kiel was a good employee who had worked at Select for more than two years and had never been subject to formal disciplinary action. A jury could conclude from the fact that other employees used the office copier for personal items without incurring management's attention that Kiel was held to a different standard. Additionally, Kiel's termination followed on

-15-

the heels of his vocal opposition to the denied accommodation request. Accordingly, the majority errs by concluding as a matter of law that Kiel cannot establish a genuine issue of material fact on the issue of pretext.

I have followed the majority in analyzing this case pursuant to <u>McDonnell Douglas</u>. I question, however, whether this analysis is appropriate in retaliation cases. I rather believe that the mixed-motive analysis of <u>Price Waterhouse</u> should be used in retaliation cases and that summary judgment is inappropriate when motive, intent, and credibility are the central issues. <u>See</u> <u>Keys</u>, 668 F.2d at 358.

For the reasons stated above, I would reverse the district court's grant of summary judgment and remand for trial on all claims. Additionally, I would hold that <u>Price Waterhouse</u> analysis applies to retaliation claims. Accordingly, I respectfully dissent.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.