# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3409

_____

| | |
|---|---|
| United States of America, ex rel Douglas Golden,             Appellant,       v. Arkansas Game & Fish Commission; Steve N. Wilson, individually and in his official capacity as Director for the Arkansas State Game and Fish Commission; Kirk Dupps, individually and as a member of the Arkansas State Game and Fish Commission; W. R. Stephens, individually and as a member of the Arkansas State Game and Fish Commission; Bill Bridgforth, individually and as a member of the Arkansas State Game and Fish Commission; Marion McCollum, individually and as a member of the Arkansas State Game and Fish Commission; Jim Hinkle, individually and as a member of the Arkansas State Game and Fish Commission; Lester Sitzes, Dr., individually and as a member of the Arkansas State Game and Fish Commission; Forrest Wood, individually and as a member of the Arkansas State Game and Fish Commission, | Appeal from the United States District Court for the Eastern District of Arkansas. |

Before WOLLMAN and BEAM, Circuit Judges, and Nangle,[1] District Judge.
_____

BEAM, Circuit Judge.

Douglas Golden (Golden) appeals the district court's[2] grant of summary judgment to Appellees Arkansas Game and Fish Commission (AG&FC), Steve N. Wilson, Kirk Dupps, W. R. Stephens, Bill Bridgforth, Marion McCollum, Jim Hinkle, Dr. Lester Sitzes, and Forrest Wood (collectively, "Appellees"). We affirm.

## I.    BACKGROUND

Golden was employed for almost thirteen years with AG&FC before being demoted and subsequently terminated on May 7, 1999. It is undisputed that in early 1996, Golden was directed by his employer to discontinue patronage of a restaurant located in the Jonesboro Holiday Inn during AG&FC business hours.[3] Management

_____

[1]The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri, sitting by designation.

[2]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

[3]Apparently, AG&FC management in the Jonesboro office had been receiving complaints from the public that employees in uniform driving state cars were spending substantial amounts of on-duty time drinking coffee and socializing at the

in AG&FC changed several weeks later, and Golden resumed his visits to the restaurant during business hours.[4] He received verbal orders and two written notices to cease visiting the restaurant, one on August 14, 1996, from his supervisor Robert Zachary and one on August 31, 1998, from Myron Means, Assistant Supervisor for District 1. Despite these notices, Golden continued to visit the restaurant. On December 2, 1998, Zachary observed Golden at the prohibited restaurant. It is these actions that AG&FC allege caused Golden's demotion and subsequent discharge for insubordination. Golden asserts that there were other reasons for his discharge. In August of 1996, after receipt of the first written notice to discontinue his visits to the restaurant, Golden reported to Zachary's supervisor, Scott Yaich, that Zachary was intoxicated in public while on duty in an AG&FC vehicle. Yaich investigated Golden's complaint and found it to be meritless.

In addition, in 1993 or 1994, Golden and his co-worker, Dennis Elkins, met with Bobby Hogue, an Arkansas State Representative, to inform him that Don Acres, Chief of Wildlife Management, was misappropriating inventory.[5] Golden alleges that these events, along with Golden's relationship with his grandson, who was involved

---

restaurant.

[4]Golden contends that he assumed that when the management changed, the directive also changed. However, he provides no evidence that he was given explicit permission by any member of the management that he could resume his visits to the restaurant.

[5]Representative Hogue recalls the meeting with Golden and Elkins, but does not recall that they discussed misappropriated inventory. Rather, he remembers discussing a general lack of equipment available to AG&FC in that area of Arkansas. Similarly, Elkins also denies that the discussion with Representative Hogue involved fraudulent activity by AG&FC.

in the Westside School shooting in Jonesboro, Arkansas, on March 24, 1998, were the real causes for his discharge.[6]

Golden filed this action on behalf of and in the name of the United States under the *qui tam* provisions of the False Claims Act, 31 U.S.C. §§ 3729-3733 (FCA), and included individual claims under the whistleblower protection provision of the FCA. Golden also sued individually under 42 U.S.C. § 1983.

On January 17, 2002, the district court dismissed Golden's FCA claims against AG&FC as an agency, the FCA claims against the individuals in their official capacities, the section 1983 claims for damages against the individuals in their official capacities, and the section 1983 claim against AG&FC. This left Golden's FCA claims against the individuals in their individual capacities, the section 1983 claims against the individuals in their individual capacities, and the section 1983 claims for injunctive relief against the individuals in their official capacities.

On September 9, 2002, the district court granted AG&FC's motion for summary judgment on the remaining claims. Golden appeals this second decision.

## II.    DISCUSSION

We review the district court's grant of summary judgment de novo. <u>United States ex rel. Costner v. United States</u>, 317 F.3d 883, 886 (8th Cir. 2003). Summary judgment is proper when there is no genuine issue of material fact in dispute. Fed. R. Civ. P. 56(e); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The non-moving party receives the benefit of all reasonable inferences to be drawn from the evidence. <u>Krause v. Perryman</u>, 827 F.2d 346, 350 (8th Cir. 1987).

---

[6]There is absolutely no firm evidence in the record that the school shooting incident affected Golden's employment, simply Golden's stated belief that it might have.

Although summary judgment is not proper where disputes exist on issues of material fact, a non-movant cannot simply rely on assertions in the pleadings to survive a motion for summary judgment. Once the moving party has met its burden of showing the absence of a genuine issue of material fact and an entitlement to judgment as a matter of law, the non-moving party may not rest on the allegations of his pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists.

Krein v. DBA Corp., 327 F.3d 723, 726 (8th Cir. 2003) (internal quotations omitted).

## A.     FCA Claims Against the Individuals in Their Individual Capacities

In order to make a prima facie case under the FCA, Golden must show that (1) the defendant made a claim against the United States; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent. See United States ex rel. Guadineer & Comito, L.L.P. v. Iowa Dep't of Human Servs., 269 F.3d 932, 936 (8th Cir. 2001), cert. denied, 536 U.S. 925 (2002). The district court in its January order dismissed the FCA claim against AG&FC and against the other Appellees in their official capacities. Thus, Golden would need to show that the Appellees in their individual capacities knowingly made false claims for government reimbursement. We agree with the district court that Golden has proffered no such evidence. Thus, Golden's *qui tam* claim under the FCA must fail.

Golden's retaliation claim under the FCA also fails as a matter of law. As the district court noted, such a claim can only be against an "employer." 31 U.S.C. § 3730(h). The district court dismissed the retaliation claim against AG&FC and against the individuals in their official capacities in its January order, which is not on appeal here. Thus, the remaining retaliation claim is against Wilson and the Commissioners in their individual capacities. AG&FC, not Wilson or the Commissioners in their individual capacities, is Golden's employer. See United

-5-

States ex rel. Siewick v. Jamieson Sci. and Eng'g, Inc., 322 F.3d 738, 740 (D.C. Cir. 2003); Yesudian, ex rel. United States v. Howard Univ., 270 F.3d 969, 972 (D.C. Cir. 2001). Thus, Golden's retaliation claim against them in their individual capacities must fail.

**B. Section 1983 Claims Against the Individuals in Their Individual Capacities and for Injunctive Relief Against the Individuals in Their Official Capacities**

Golden alleges that Appellees violated his rights under 42 U.S.C. § 1983 when he was demoted and discharged. Golden claims a due process violation, a free speech and free association violation, and an equal protection violation. We agree with the district court's treatment of the meritless due process and equal protection claims. See 8th Cir. R. 47B.

We give Golden the benefit of all reasonable inferences in evaluating the district court's grant of Appellees' motion for summary judgment on his free speech and free association claims. See Perryman, 827 F.2d at 350. However, once Appellees proffered their non-discriminatory reason for terminating Golden (frequenting the banned restaurant after being told not to), the burden shifted to Golden to present evidence that the reason given for his discharge was pretextual. Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1135 (8th Cir. 1999).

> [T]he ultimate question is whether the plaintiff presents evidence of conduct or statements by persons involved in the employer's decision-making process reflective of a discriminatory attitude sufficient to allow a reasonable jury to infer that the attitude was a motivating factor in the employer's decision to fire the plaintiff.

Id. (internal quotations omitted). Golden cannot rely simply on his prima facie case, but he must submit specific evidence that rebuts Appellees' proffered non-discriminatory reason (frequenting the banned restaurant after being told not to) for

his termination.  See id.  He must also establish a causal connection and actual involvement by the named parties.  He has failed to submit any evidence connecting Appellees with the decision to terminate him, any evidence connecting the termination to his alleged protected speech, any evidence that Appellees knew of his alleged protected speech or any evidence that the proferred non-discriminatory reason was in any manner false.  Without this evidence summary judgment must be granted.  Thus, Golden's section 1983 claims of free speech and association must fail.

## III.  CONCLUSION

For the reasons stated above, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.