[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 6, 2011
JOHN LEY
CLERK

No. 10-15633
Non-Argument Calendar
_____

D.C. Docket No. 5:09-cv-00085-CAR

EVERETT HENDERSON,

Plaintiff-Appellant,

versus

FEDEX EXPRESS,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(October 6, 2011)

Before HULL, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Everett Henderson appeals the district court's order granting summary

judgment in favor of his former employer, Federal Express Corporation, in his

employment discrimination action brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a) and 2000e-3(a), and the Americans with Disabilities Act, 42 U.S.C. § 12112. On appeal, Henderson argues that the district court improperly relied upon inadmissible hearsay evidence in ruling on FedEx's motion for summary judgment. He also contends that the district court misapplied the legal standard for Title VII retaliation claims. For the reasons set forth below, we affirm.

I.

In June 2007, Henderson filed a two-count complaint against FedEx. In Count One, Henderson asserted that FedEx had failed to provide him with a reasonable accommodation for a medical condition, as required by the Americans with Disabilities Act. In Count Two, Henderson contended that he had been discriminated against on account of his race and had been subjected to a retaliatory discharge, in violation of Title VII. Only Henderson's Title VII retaliation claim is at issue in this appeal.

FedEx moved for summary judgment with respect to all of Henderson's claims. The company argued that Henderson had failed to establish a *prima facie* case of retaliation because he had not proved that there was a causal connection between his protected activity and his termination. FedEx also asserted that it had

2

a legitimate, non-discriminatory reason for terminating Henderson's employment, namely, that Henderson had falsified his time card.

FedEx submitted Henderson's deposition in support of its summary judgment motion. In his deposition testimony, Henderson explained that he filed a series of complaints and grievances during his employment with FedEx. On March 21, 2005, he filed an internal grievance asserting that his supervisor, Bryan Evans, had participated in crude sexual conversations with other employees. Later, on September 14, 2005, Henderson was interviewed by a human resources representative regarding a complaint filed by another employee. During that interview, Henderson described an incident where Evans had lied about another employee being licensed to transport hazardous materials, and also expressed concerns "about management inconsistencies and practices."

FedEx also submitted the transcript of Evans's deposition. Evans explained that Henderson had been terminated for falsifying his time card. FedEx's Acceptable Conduct Policy made the deliberate falsification of company documents a terminable offense. In September 2005, the company received a report that two employees at its facility in Macon, Georgia, were falsifying time cards. Management responded by installing a surveillance camera near the time clock. On September 22, Evans observed Henderson walk into the building and

join an exercise routine that was already in progress without taking off his backpack. Evans believed that Henderson may have been late for work, so he audited Henderson's time card later that afternoon. Henderson had listed a clock-in time of 7:14 a.m., on his time card, but he did not appear on the surveillance videotape until around 3:00 p.m., when he punched out for the day. The videotape showed another employee, Greg Barnes, clocking in at 6:40 or 6:42 a.m., and then clocking in a second time at 7:14 a.m. in a very suspicious manner. Evans concluded that Barnes had clocked in for Henderson so that Henderson would not appear to have been late. Evans's supervisor, Michael Britton, and Senior Security Specialist Tad Fuqua submitted declarations that corroborated Evans's account of what was on the videotape.

Henderson opposed FedEx's summary judgment motion. He argued that he had established a *prima facie* case of retaliation. He observed that there was a gap of just two weeks between his September 14 interview and his termination. Henderson asserted that the close temporal proximity between those two events was sufficient to establish causation. Henderson further argued that FedEx's justification for his termination was pretextual because other FedEx employees were not fired after they falsified company records. In a sworn affidavit, Henderson explained Evans must have known about his September 14 interview

4

because Evans reminded Henderson about the time when the interview was supposed to take place.

The district court granted FedEx's motion for summary judgment. The district court concluded that Henderson had failed to establish a causal link between his protected conduct and the adverse employment action. The district court explained that Henderson's March 2005 complaint was too distant in time from his termination to qualify as a proximate cause. The district court also noted that there was no evidence that Henderson's supervisors were even aware of his September 14, 2005, interview. In any event, the district court determined that Henderson's falsification of his time card was a superseding cause that broke any chain of causation between Henderson's complaints and his dismissal. Finally, even if Henderson had been able to establish a *prima facie* case, the district court concluded that he had failed to demonstrate that FedEx's proffered reason for his termination—that he had falsified his time card—was pretextual.

Henderson subsequently filed a motion for reconsideration under Rule 59(e) of the Federal Rules of Civil Procedure. Henderson asserted that the district court made two principal errors in granting FedEx's motion for summary judgment. First, he argued that it was improper for the district court to rely on the videotape of the time-card incident because the videotape was inadmissible hearsay. Second,

he contended that the district court had misapplied the legal standard for Title VII retaliation claims.

The district court denied Henderson's motion for reconsideration. The district court explained that it had not actually reviewed the surveillance videotape, but rather, had considered the deposition testimony of several FedEx employees who described what the videotape showed. That testimony was not hearsay, the district court observed, because it was based on the personal observations of those witnesses, and because it was offered as evidence of the decisionmakers' mindset rather than as proof that Henderson actually had fabricated his time card. The district court additionally concluded that it had applied the proper legal standard to Henderson's retaliation claim.

## II.

We review a district court's evidentiary rulings for an abuse of discretion. *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1249 (11th Cir. 2007). The denial of a motion for reconsideration is also reviewed for an abuse of discretion. *Id.* at 1254. Evidence submitted in support of a summary judgment motion must be based on personal knowledge and must set out facts that would be admissible under the Federal Rules of Evidence. Fed.R.Civ.P. 56(c)(4). Inadmissible hearsay cannot be considered in ruling on a motion for summary judgment. *Macuba v. Deboer*,

193 F.3d 1316, 1322 (11th Cir. 1999). Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c).

In this case, the district court did not review the videotape of the time-card incident. Instead, the district court considered the testimony of Evans, Britton, and Fuqua, all of whom stated that they had watched the videotape and that the videotape showed Barnes "clocking in" for Henderson, in violation of FedEx's Acceptable Conduct Policy. That testimony was not hearsay because it was based on the personal observations of those witnesses, rather than on out-of-court statements made by others. *See* Fed.R.Evid. 801(c). In addition, the district court considered that testimony not for the truth of the matter asserted—that Henderson actually fabricated his time card—but as evidence of the decisionmakers' state of mind at the time that they terminated Henderson's employment. Because the testimony about the videotape was not hearsay, the district court did not abuse its discretion by considering it.

## II.

We review a district court's grant of summary judgment *de novo*. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007). Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(a). We view the evidence in the light most favorable to the

non-moving party and draw all reasonable inferences in favor of that party.

*Thomas*, 506 F.3d at 1363. Nevertheless, to overcome a motion for summary

judgment, the non-moving party must produce more than a scintilla of evidence to

support his position. *Young v. City of Palm Bay*, *Fla.*, 358 F.3d 859, 860 (11th

Cir. 2004). As noted above, the denial of a motion for reconsideration is reviewed

for an abuse of discretion. *Corwin*, 475 F.3d at 1254.

Title VII prohibits an employer from retaliating against an employee who

has "opposed any practice made an unlawful employment practice by [Title VII]"

or who has "made a charge, testified, assisted, or participated in any manner in an

investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a).

Where, as here, a plaintiff relies on circumstantial evidence to prove retaliation,

we apply the burden-shifting framework of *McDonnell Douglas Corp. v. Green*,

411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Brown v. Ala. Dep't of

Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010). Under *McDonnell Douglas*, the

plaintiff must first establish a *prima facie* case of retaliation by showing that:

(1) he engaged in a statutorily protected activity; (2) he suffered an adverse

employment action; and (3) there is a causal connection between his protected

8

activity and the adverse action. *Id.* If the plaintiff is able to make out a *prima facie* case, the burden shifts to the defendant to offer a legitimate reason for the challenged employment action. *Id.* The burden then shifts back to the plaintiff to prove that the proffered legitimate reason is pretextual. *Id.* at 1181-82.

This case concerns the causation element of the *prima facie* case. To establish causation, a plaintiff must show that: (1) the decisionmakers were aware of his protected conduct and (2) his protected activity and the adverse employment action were not wholly unrelated. *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). Close temporal proximity between the protected activity and the adverse action may be sufficient to show that the two were not wholly unrelated. *See Thomas*, 506 F.3d at 1364. If there is a delay of more than three months between the two events, then the temporal proximity is not close enough, and the plaintiff must offer some other evidence tending to show causation. *Id.* Intervening acts of misconduct can break any causal link between the protected conduct and the adverse employment action. *See, e.g.*, *Kiel v. Select Artificials*, *Inc.* 169 F.3d 1131, 1136 (8th Cir. 1999) (*en banc*) (explaining that the plaintiff's intervening misconduct "eroded any causal connection that was suggested by the temporal proximity of his

9

protected conduct and his termination"); *cf. Fleming v. Boeing Co.*, 120 F.3d 242, 248 (11th Cir. 1997) (holding that the plaintiff had failed to establish causation, even though the employer refused to hire her for a permanent position shortly after she had filed a complaint of sexual harassment, because it was clear from the record that the plaintiff failed to meet the employer's qualifications for permanent employment).

In this case, the district court applied the proper legal standards to Henderson's retaliation claim. The district court determined that Henderson had been unable to establish a causal connection between his statutorily protected activities and his termination. That conclusion is supported by the record evidence. First, there was a six-month gap between Henderson's March 21, 2005, complaint and his September 28, 2005, termination, so Henderson could not rely solely on temporal proximity to establish a connection between those two events. *See Thomas*, 506 F.3d at 1364. Nor did he introduce any other evidence that linked his March 21 complaint against Evans to his termination. *See id.* Therefore, Henderson failed to establish causation with respect to that protected activity.

In addition, Henderson was not able to establish a causal link between his September 14, 2005, interview and his termination. Those events occurred only

10

two weeks apart, which would normally give rise to an inference of causation. *See Thomas*, 506 F.3d at 1364. In this case, however, Henderson failed to show that the decisionmakers were aware of his protected conduct. Although Evans apparently knew that Henderson was going to speak with someone from human resources, there was no evidence that Evans ever learned what was said at the meeting. Thus, Henderson failed to establish that Evans knew that he had engaged in conduct protected by Title VII during the interview. *See Gupta*, 212 F.3d at 590 (explaining that a plaintiff must establish the decisionmaker's knowledge of his protected activity in order to prove causation). In addition, Henderson's falsification of his time card was an intervening act of misconduct that diminished any inference of causation that may have arisen out of the temporal proximity between his September 14 interview and his termination. *See Kiel*, 169 F.3d at 1136. Therefore, the district court appropriately concluded that Henderson had failed to establish a causal connection between his September 14 interview and his termination.

As Henderson failed to establish a *prima facie* case, it was unnecessary for the district court to reach the pretext stage, so Henderson's arguments regarding pretext are irrelevant. *See Brown*, 597 F.3d at 1181-82 (noting that pretext becomes a relevant issue only after the plaintiff has established a *prima facie*

11

case).  Because the district court properly evaluated Henderson's Title VII retaliation claim, we affirm the grant of summary judgment with respect to that claim.  We also affirm the denial of Henderson's motion for reconsideration because that motion failed to identify any errors in the district court's summary judgment order.

**AFFIRMED.**